(No. 12944.—Decree affirmed.)

The Atchison, Topeka and Santa Fe Railway Company, Appellee, vs. Charles M. Stamp, Appellant.

*Opinion filed December 17, 1919.*

1. Plats—*acceptance of dedication will not be implied without proof of convenience and necessity to public.* Where it is claimed that a plat has been accepted as a common law dedication, the rule that the acceptance will be implied from slight circumstances can not be applied without proof that the dedication was convenient or necessary to the public.

2. Equity—*equity has jurisdiction to quiet title independently of amendment of 1911 to section 50 of Chancery act.* Where the complainant is in possession or where the lands in controversy are unimproved and unoccupied, a court of chancery, under its general equity powers, has jurisdiction of a bill to remove a cloud and to quiet title independently of the amendment of 1911 to section 50 of the Chancery act.

3. Same—*general prayer will support any decree warranted by facts alleged and proved.* A general prayer for relief is sufficient to support any decree warranted by the facts alleged in the bill and established by the evidence.

4. Limitations—*railroad corporations may acquire property by limitation.* The use of the word "person" in sections 1 and 6 of the Limitations act does not preclude railroad corporations from acquiring property by limitation, as the word "person" is defined to include corporations in paragraph 5 of section 1 of the act on the construction of statutes.

Appeal from the Circuit Court of Cook county; the Hon. Merritt W. Pinckney, Judge, presiding.

William K. Pattison, (Douglas C. Gregg, of counsel,) for appellant.

Homer W. Davis, John R. Ong, and Sloane Turgeon, for appellee.

Mr. Justice Farmer delivered the opinion of the court:

The Atchison, Topeka and Santa Fe Railway Company, appellee, filed its bill in chancery in the circuit court of Cook county alleging it was the owner in fee simple of certain

land particularly described, being a part of the east half of section 30, township 39, range 14, east of the third principal meridian, lying west of the west line of South Ashland avenue, east of the east line of Robinson street produced north to the center line of the channel of the west fork of the south branch of the Chicago river, north of the northerly line of Elevator street and south of the center line of said west fork of the south branch of the Chicago river. To the bill was attached a plat showing the land and its boundaries. The bill alleged that on September 1, 1887, Charles W. Smith acquired title to the land by deed of conveyance, and pursuant thereto on or about the same date entered into possession claiming in good faith to be the owner; that he paid all taxes and assessments thereon until November 1, 1888, when he and his wife conveyed the property to the Atchison, Topeka and Santa Fe Railroad Company in Chicago, which deed was duly acknowledged and was recorded November 2, 1888. Said railroad company entered into possession at once pursuant to said conveyance, claiming to be the owner in fee simple, and continued in the actual, open, visible, exclusive, adverse and notorious possession and occupation of the whole of the property, and by itself or its tenants occupied and used the property for railroad purposes until March, 1902, during which time it paid all taxes and assessments levied thereon,—a period of more than seven successive years. In March, 1902, the Atchison, Topeka and Santa Fe Railroad Company in Chicago conveyed the property to appellee, the Atchison, Topeka and Santa Fe Railway Company. Appellee had been in possession of the property as lessee of the Atchison, Topeka and Santa Fe Railroad Company in Chicago since 1895, and in March, 1902, purchased that company's line of railroad and property, including the land in controversy. The bill alleged the appellee claimed in good faith to be the owner in fee of the premises; that it took actual, open, visible, exclusive, adverse and notorious possession of the property

and has continuously remained in such possession ever since, still is in possession, and has paid all taxes and assessments levied on said real estate or any part thereof. The bill alleged appellee is now the owner of the land in fee simple, subject only to the lien of three trust deeds on the property given to secure bonds, and the right or easement for street purposes of the city of Chicago of the portion of said premises falling within the limits of Harvey street. The bill alleged that evidence of its ownership may be lost from lapse of time and death of witnesses by whom its title could be established. It was further alleged that a large number of persons had deeds purporting to convey to them said premises or a portion thereof, which were of record, and they claimed some right, title or interest in the property or some part thereof. A great many persons were named as defendants and others as unknown owners. The prayer of the bill was that appellee be adjudged and decreed the owner in fee simple, its title established and confirmed, and for such other and further relief as equity might require.

Charles M. Stamp, appellant, answered the bill, claiming to be the owner in fee simple of seventeen lots situated in four different blocks shown on an old plat of Canalport, together with one-half the streets adjacent thereto, and an easement over the property lying east of and between said lots and south of Ashland avenue for the purpose of ingress and egress.

After issues were made up, the cause was referred to a master in chancery to take the evidence and report his conclusions. Evidence, oral and documentary, at considerable length, was heard, and the master reported recommending a decree in accordance with the prayer of the bill; that the claim or interest of Charles M. Stamp and his predecessors in title be set aside and removed as a cloud on complainant's title; that all persons claiming title against complainant be enjoined from asserting it and that all persons claiming through or under them be enjoined. Objections of appel-

lant before the master were overruled and were renewed as
exceptions before the chancellor. The exceptions were over-
ruled and a decree entered as recommended by the master.

The errors assigned and relied on are: (1) A court of
equity had no jurisdiction to establish and confirm appellee's
title; (2) a railroad company cannot lawfully acquire title to
land by limitation; (3) payment of taxes was not sufficiently
proved to establish title by limitation; (4) that even if ap-
pellee might lawfully acquire title by limitation, the proof
is insufficient to establish such title.

Appellant contended before the master and the chancel-
lor that the old Canalport plat was a statutory plat. The
master found and reported, and the court decreed, that the
plat did not comply with or conform to the statute relat-
ing to making plats in effect at the time the plat was made,
and that it had never been accepted by the public or by the
city of Chicago or any public authorities, and no municipal
or public improvements of any kind were ever made or
placed on the property. Appellant now concedes that the
court properly decreed the Canalport plat was not a statu-
tory plat but insists it was a common law dedication, and
that the court erred in finding and decreeing it had never
been accepted by the public. He admits there was no evi-
dence that it was so accepted prior to its vacation, but re-
lies on a presumption of its acceptance on the ground that
it was favorable to the public. It has been held that when
a dedication is very beneficial or greatly convenient or nec-
essary to the public, acceptance will be implied from slight
circumstances. (*Rose* v. *Village of Elizabethtown,* 275 Ill.
167.) But there was no proof here to bring the case within
that rule. There is no proof that the dedication was con-
venient or necessary to the public, but the evidence is that
it was never accepted by the public. The rules more aptly
bearing on this question were discussed in *Littler* v. *City
of Lincoln,* 106 Ill. 353; *Woodburn* v. *Town of Sterling,*
184 id. 208; *Birge* v. *City of Centralia,* 218 id. 503.

The land on which Canalport was platted was entered by Patrick Welch in 1834. He conveyed it to Richard J. Hamilton and Hiram Pearsons the same year. They caused a map of it, with other property, to be made showing a subdivision into blocks, lots and streets under the description of Canalport. The map was recorded in September, 1835. The parties to this litigation are agreed that it was not executed in accordance with the statute governing plats at that time and is not a statutory plat. August 21, 1841, Hamilton and Pearsons filed for record a vacation of the plat of Canalport, which recites that it was executed pursuant to an act of the General Assembly entitled "An act to vacate town plats," approved February 19, 1841. Through bankruptcy proceedings, foreclosures and sheriffs' deeds the title became much tangled and complicated. In 1884 the Union National Bank of Chicago obtained from Samuel J. Walker, and from the master in chancery of the United States district court under a foreclosure sale, deeds embracing the property in controversy, and the bank conveyed it to the Union Safe Deposit Company. In 1887 the Union Safe Deposit Company conveyed the premises to Charles W. Smith, who was an officer of and took the title as agent for the Atchison, Topeka and Santa Fe Railroad Company in Chicago. Smith conveyed the property to that company in October, 1888, and that company conveyed it to the appellee in March, 1902. Appellant traces his claim of title to certain lots in Canalport through *mesne* conveyances to Azro Patterson, who was decreed in a burnt-record proceeding in the circuit court of Cook county in 1877 to be the owner of said lots. The evidence shows that no streets were laid out or opened on the land platted as Canalport. A few "squatters" built shacks on the land and lived there for a time, and the only highway there was a path called Crazy lane. About 1887 the people all moved away, their buildings were torn down and appellee and its predecessors in title have since been in possession. Whether appellee proved good record

title or not, it and those under whom it claimed proved title under the twenty year Statute of Limitations and also under section 6 of the Limitation statute.

Appellant contends the authority to maintain a suit in equity of this character is found in section 50 of the Chancery act, as amended in 1911. Prior to the amendment said section authorized a court of chancery to "hear and determine bills to quiet title, and remove clouds from the title to real estate, whether the lands in controversy are improved or occupied or unimproved or unoccupied." Among other things added by the amendment in 1911, not necessary here to be referred to, was authority "to establish and confirm titles to real estate or incumbrances thereon." Appellant's position is that the amendment is in conflict with section 5 of the bill of rights, protecting the right of trial by jury; that other provisions of the amendment than the one referred to are also unconstitutional, and that all the amendments are so tied together that they cannot be separated and all are void. Appellant concedes that this court has dealt with the amendment of 1911 and treated it as constitutional in several cases, but claims the question here raised was not raised in those cases and is therefore not foreclosed.

We are of opinion that a court of chancery had jurisdiction of the bill in this case independently of the amendment of 1911. Before that, courts of chancery had jurisdiction to entertain bills to remove clouds from and quiet title where the complainant was in possession and claimed to be the owner or where the lands in controversy were unimproved and unoccupied. (*Gage* v. *Abbott,* 99 Ill. 366.) In *Walker* v. *Converse,* 148 Ill. 622, the bill alleged complainant owned certain lots; that he acquired his title by virtue of tax deeds constituting color of title made in good faith and the payment of all taxes thereon for seven successive years; that during all that time the premises were vacant and unoccupied; that since the last payment of taxes the complainant had taken and was then in possession. The

290—28

bill alleged certain conveyances to the defendants consti-
tuted a cloud on complainant's title and prayed title be con-
firmed, established and quieted in him; that the title and
claim of defendants be declared void and their deeds held
for naught. There was also a general prayer for relief.
The circuit court granted the relief prayed and by the de-
cree adjudged complainant to be the legal owner in fee
simple and that defendants' deeds were clouds on his title.
They were perpetually enjoined from asserting any right
or title to the premises and the title of complainant was
decreed to be quieted. Among other cases referred to in
the opinion is *Sharon* v. *Tucker,* 144 U. S. 533, which the
court said was precisely in point and commented upon it at
considerable length. In that case a decree in favor of the
complainant in accordance with the prayer of his bill was
sustained, and the ground of equitable jurisdiction, this
court said, "was the obvious difficulty and embarrassment
in asserting and protecting a title not evidenced by any rec-
ord but resting in the recollection of witnesses, and that
the warrant for its exercise is to be found in the ordinary
jurisdiction of equity to perfect and complete the means by
which the right, estate or interest of holders of real prop-
erty,—that is, their title,—may be proved and secured or to
remove obstacles to its enjoyment."

We deem it unnecessary to cite further authority upon
this proposition. The case made by the bill and the proof
is one of which a court of chancery has jurisdiction under
its general equity powers and under section 50 of the Chan-
cery act before its amendment. A general prayer for re-
lief is sufficient to support any decree warranted by the facts
alleged in the bill and established by the evidence. *Van-
Zanten* v. *VanZanten,* 269 Ill. 491; *Struve* v. *Tatge,* 285
id. 103.

It is further contended by appellant that the limitation
statutes do not apply to and cannot be availed of by railroad

corporations. It is admitted there are no decisions to that effect, but it is argued that only the term "person" is used in sections 1 and 6; that a railroad corporation is not a person and is therefore not within the meaning of the act. By paragraph 5 of section 1 of chapter 131 of our statutes "the word 'person' or 'persons' as well as all words referring to or importing persons, may extend and be applied to bodies politic and corporate as well as individuals." Those words have been applied to railroad corporations in *Illinois Central Railroad Co.* v. *Noyes,* 252 Ill. 178, *Illinois Central Railroad Co.* v. *Cavins,* 238 id. 380, *Chicago, Milwaukee and St. Paul Railway Co.* v. *Grant,* 167 id. 489, and numerous other cases.

It is further contended by appellant that the land in controversy was scheduled by appellee as a part of its railroad property and was assessed as railroad track, and that this was not sufficient; that the limitation statute only applies when the land is assessed and taxed as a distinguishable tract; that the payment must be of a separate tax on a specific tract as distinguishable from all other property. Appellee's schedules filed in compliance with the Revenue law specifically described its land, which embraced the land in controversy. It paid all the taxes on the property under the term "railroad track." It is not denied the taxes on the land in controversy were actually paid each year by appellee and its predecessors in title, and no claim is made that anyone else ever paid the taxes any year. Appellant's position upon the question we think untenable, but even if it were not, appellee conclusively proved title by limitation under section 1.

The decree is affirmed.                    *Decree affirmed.*