LAKEVIEW TRUST & SAVINGS BANK, Trustee, Plaintiff-Appellee, v. JUAN ESTRADA, d/b/a Grano Del Oro, a/k/a Grano Del Oro, Inc., a/k/a El Grano Del Oro, Inc., etc., Defendant-Appellant.

First District (4th Division) No. 84—1121

Opinion filed July 3, 1985.

Leonard S. Whitcup, of Chicago (George D. Levy, of counsel), for appellant.

Terrence Michael Jordan, of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

Lakeview Trust & Savings Bank (Lakeview Bank), as trustee under trust agreement No. 4769, filed an action in the Cook County circuit court to quiet title in property located in the 4300 west block of

26th Street in Chicago which it held pursuant to the land trust agreement. A corporation by the name of El Grand del Oro, Inc., of which Luis Quezada (Quezada) was specified as president, was named as beneficiary of the trust.

Lakeview's action named "Juan Estrada, d/b/a Grano del Oro, a/k/a Grano del Oro, Inc., a/k/a El Grano del Oro, Inc." as defendant in the suit. Estrada's answer to the complaint denied that he (Estrada) claimed title to the property in his individual capacity. Instead, in his capacity as president of Grano de Oro, Inc., he claimed title to the property on behalf of that corporation in his counterpetition for declaratory relief and an injunction which he filed with his answer to Lakeview's pleading.

Pursuant to Lakeview's motion for judgment based upon the pleadings, the trial court entered an order which *inter alia* dismissed Estrada's counterpetition and found that title to the property rested in Lakeview Bank as against Estrada as the named defendant in Lakeview's complaint. Roughly a month later, Estrada as president of Grano de Oro, Inc., and the administrator of the Small Business Administration sought to intervene in Lakeview's proceeding for quiet title. The trial court denied the motion. No appeal was taken from either order.

About three years later, Lakeview Bank filed a motion in the Cook County circuit court to enforce the trial court's order which quieted title in Lakeview. The pleading sought enforcement not only against Estrada but also against Marshall Villarreal (Villarreal), whom Lakeview alleged to be the current corporate officer and sole shareholder of Grano de Oro, Inc. (not El Grano del Oro, Inc., the original defendant in Lakeview's proceeding for quiet title) by reason of Villarreal's purchase of Estrada's stock in Grano de Oro, Inc.

The trial court entered an order which *inter alia* joined Villarreal and Grano de Oro, Inc., as party-defendants in Lakeview's action to quiet title and permanently enjoined them from asserting any right, title or interest in the property at issue. Some three weeks later, Villarreal and Grano de Oro, Inc., motions the trial court to vacate this order. The trial court denied the motion.

Villarreal and Grano de Oro, Inc., now appeal from the trial court's order which denied their motion to vacate the trial court's order against them by which the court enforced its previous order of December 1980.

For the following reasons, we reverse and remand. We find that:

1. The trial court's order against Villarreal and Grano de Oro, Inc., was:

a. void as against Grano de Oro, Inc., for failure to serve summons upon it;

b. reversible error as against Grano de Oro, Inc., and Villarreal for failure to afford them their due process right to answer the claim against them;

c. reversible error with regard to Grano de Oro, Inc., and Villarreal as being against the manifest weight of the evidence.

2. The trial court's order against Estrada d/b/a Grano del Oro, Inc., was void for failure to join Grano de Oro, Inc., who was a necessary and indispensable party to the proceeding.

BACKGROUND

In order to provide sufficient clarity to the factual history of the action presently before us, we deem it appropriate to state first the nature of the parties and the documents of record which indicated their interests, if any, in the subject premises. Thereafter we set forth a summary of the actions taken by the parties below.

A. CLARIFICATION OF THE NATURE OF THE PARTIES AND DOCUMENTS OF RECORD PERTAINING TO THEIR INTERESTS

Much of the dispute between the parties results from a confusion of the name (or names) of the business entity (or entities) which purchased the property in question, took the property pursuant to warranty deed, executed a mortgage on the property with the SBA, and placed the property into the land trust with Lakeview Bank. These business names, and their possible variations, are "[EL] GRANO DEL ORO" or "[EL] GRANO DE ORO," and "[EL] GRAND DEL OR" or "[EL] GRAND DE ORO." The spanish phrase "[el] grano de [del] oro" means essentially "[the] grain of [the] gold" in English. The term "[el] grand de [del] oro" has no commonly understood meaning in Spanish because there is no word "grand" in Spanish; consequently the phrase is not susceptible of translation into English. See Cassell's Spanish Dictionary 455 (grand, grande), 456 (grano), 593 (oro) (1968).

There are no documents in the record to indicate whether a business entity named "Grano del Oro" was ever incorporated in the State of Illinois. Lakeview's original petition for quiet title alleged that (1) there was no Illinois corporation known as "El Grano del Oro, Inc." registered with the Secretary of State of the State of Illinois; (2) there was no Illinois corporation known as "Grano del Oro, Inc." so registered; (3) there was no listing in the Cook County clerk's office "pursuant to the assumed names act" of any of the following names—"Grano del Oro; Grano del Oro, Inc.; El Grano del Oro, Inc."

In his verified answer, Estrada denied each of these allegations.

A document of record establishes that a business entity named "Grano de Oro, Inc." was incorporated in the State of Illinois by certificate of incorporation dated June 18, 1976.

Although Lakeview Bank alleged in its action to quiet title that a business entity entitled "El Grand del Oro, Inc." was an Illinois corporation in good standing, there is no document in the record to establish the allegation. Estrada's verified answer to Lakeview's complaint to quiet title neither admitted nor denied this allegation, because he stated he did not have sufficient knowledge to form a belief as to the truth thereof. The subsequent motion of Villarreal and Grano de Oro, Inc., to vacate the trial court's later order of enforcement of the December 1980 order did state that "El Grand del Oro, Inc." was incorporated in the State of Illinois in 1980.

There are no documents in the record to show whether an entity named "Grand de Oro" was ever incorporated in Illinois. Further, although Luis Quezada claimed to be a corporate officer of "El Grand del Oro, Inc." and Juan Estrada and later Marshall Villarreal claimed to be a corporate officer of "Grano de Oro, Inc.," there are no corporate documents in the record to establish whether they were indeed such corporate officers. In fact there are no corporate documents in the record with regard to any corporation or other business entity with the exception of the certification of incorporation of "Grano de Oro, Inc."

With regard to documents relating to ownership of the premises at issue, the record contains the following. First, there is no copy in the appellate record of any real estate sales contract between the Avilas (the previous owners of the property) and Quezada, Estrada, any other individuals, or any of the businesses.

On August 10, 1984, Villarreal and Grano de Oro, Inc. filed a motion with this court to supplement the appellate record to include a copy of an executed real estate sales contract between the Avilas and Quezada and Estrada as officers of "Grano de Oro, Inc." Lakeview Bank objected to the motion on the ground that the contract was not presented to the trial court and consequently Lakeview had had no opportunity to test the genuineness or authenticity of the document. The motion was denied by this court by order dated August 16, 1984, and will not be considered here.

The record shows that two deeds were recorded in Cook County. Both deeds were identical in that they were executed by the Avilas on February 18, 1978. The first recorded deed conveyed title to the property to "El Grand del Oro, Inc." It was recorded in Cook County on

May 8, 1978. A second warranty deed was re-recorded in Cook County on June 22, 1978. It named "El Grano de Oro, Inc." as grantee.

Documents of record establish that after the Avilas transferred the property, but before either deed was recorded, Quezada and Estrada obtained a purchase money mortgage on the property with the SBA. The mortgage named a business entity of "Grano de Oro, Inc." as mortgagor. The document was dated March 30, 1978, and was signed by Quezada and Estrada. It was recorded in Cook County on April 11, 1978.

Roughly two years after the property was sold by the Avilas, on April 26, 1980, a business entity named "El Grand del Oro, Inc." placed the property in land trust pursuant to trust agreement with Lakeview Bank. The warranty deed conveying the property to Lakeview was signed by Luis Quezada as president and another individual whose name is unclear, as secretary. (The document shows clearly only "Fran----- -------Quezada" as the name of this other individual.) There is no copy of the trust agreement in the appellate record (although Lakeview Bank's complaint for quiet title stated that a copy of the trust agreement was attached to the pleading and incorporated therein by reference).

There is no clear proof in the record as to who has been making payments on the SBA mortgage, real estate taxes, or other costs and expenses relating to the property. Apparently Estrada, and later Villarreal, have been in continuous possession of the property since 1978.

## B. SUMMARY OF ACTIONS TAKEN BELOW

### 1. ACTION TO QUIET TITLE

Lakeview Bank filed its action to quiet title in Cook County circuit court on August 18, 1980 (*i.e.*, approximately four months after the property was placed in a land trust and two years after the warranty deed conveying the property to Lakeview Bank was recorded). The complaint named "Juan Estrada d/b/a Grano del Oro, a/k/a Grano del Oro, Inc., a/k/a El Grano del Oro, Inc." as defendant. It made no reference to "Grano *de* Oro, Inc." or any of its variations ("El Grano de Oro, Inc.," etc.).

The complaint alleged in pertinent part that the current beneficiaries of the land trust were "Luiz Quezada and El Grand del Oro, Inc., an Illinois corporation" in good standing in Illinois and that the *res* of the trust was property commonly known as 4344 West 26th Street, Chicago.

The complaint further alleged that Quezada and El Grand del Oro, Inc. had obtained title to the property pursuant to warranty deed from the Avilas executed in February 1978 and recorded in May 1978 (*i.e.*, the first warranty deed recorded in Cook County). It stated that Estrada claimed to be owner of the subject real estate under color of title of the warranty deed recorded in June 1978 (*i.e.*, the second warranty deed recorded in Cook County) and that he was currently in possession of the premises.

Lakeview Bank requested the following relief: (1) an order that Estrada's color of title be declared to be null and void giving him no title to the property; (2) an order that the June warranty deed be declared null and void as an altered instrument; (3) an order that title to the subject real estate be quieted and declared to be in Lakeview Bank exclusive of any claim of Estrada; and (4) an order assessing fees and costs against Estrada.

Estrada filed his verified answer to the complaint on October 16, 1980. In material substance he admitted that Quezada claimed title but denied that he (Estrada) as an individual claimed title to the property. Estrada also filed as a separate pleading a "counter-petition for declaratory relief and injunction" which he brought in his capacity as president of Grano de Oro, Inc., in which he claimed title to the property on behalf of the corporation.

Lakeview Bank responded with a motion to dismiss the counter-complaint on the grounds that Grano de Oro, Inc. "is not a party defendant to this cause and therefore has no standing to bring a 'Counter-Petition' in this action with the parties as they are now constituted." Lakeview further motioned the court to grant judgment in its favor based on the pleadings. It argued that such judgment was proper because Estrada's answer denied that Estrada claimed any interest in the subject premises. Both of Lakeview's motions were filed of record on November 18, 1980. The following day notice was mailed to Estrada's attorney to inform him that the motions would be presented to the trial court and an immediate hearing thereon requested on December 15, 1980.

The trial court's order which granted judgment on the pleadings to Lakeview Bank and dismissed Estrada's counterpetition was entered on December 15, 1980. The court declared Estrada's color of title to be null and void and as giving him no title to the property. The order further stated that title was quieted and declared to be in Lakeview Bank exclusive of any claim of Estrada. The court ordered Estrada to pay Lakeview Bank's costs. There is no transcript in the record of any court hearing on the matter.

2. PETITION TO INTERVENE IN LAKEVIEW'S ACTION TO QUIET TITLE

On January 14, 1981, attorney Stuart Finkle (who was not Estrada's previous attorney) filed his appearance in the cause as attorney for "intervening defendants El Grano de Oro, Inc., a corporation of Illinois and Administrator of the Small Business Administration." On the same day pleadings were filed requesting that the court grant Grano de Oro, Inc., and the SBA leave to intervene in the proceedings or to be joined as party-defendants in the cause. The motion further requested that the December 15, 1980, order be vacated.

The trial court granted leave to file the appearance and petition to intervene and vacate the previous order *instanter* on January 23, 1981, and set a briefing schedule on the issues raised in the pleadings.

Lakeview Bank motioned the court to strike the petition to intervene on two grounds. First it argued that Grano de Oro, Inc. and the SBA had no standing to make their motion because: (a) they did not obtain leave to file the petition until January 23, 1981; (b) they did not represent or stand in the stead of, nor claim a right under or by virtue of, Juan Estrada; and (c) they were not affected by the order of December 15, since that order was narrowly drawn and did not affect their rights. Lakeview also claimed that the petition should be denied because the motion to vacate should have been attached to the petition to intervene and should not have been filed "prior to obtaining leave to so do or leave to intervene."

The trial court entered its order denying leave to intervene by Grano de Oro, Inc., and the SBA on March 23, 1981. No specific basis for the judgment was given. The court's order found no just reason to delay enforcement of or appeal from the order. There is no transcript of any court hearing on the motions.

Apparently no appeal was even taken from either the trial court's order of December 15, 1980, or March 23, 1981.

3. MOTION FOR ENTRY OF ORDERS OF ENFORCEMENT OF THE DECEMBER 15, 1980, ORDER

On November 28, 1983, Lakeview Bank filed with the trial court its motion for entry of orders of enforcement of the trial court's order of December 15, 1980. The motion alleged that Estrada had continued to exercise control over the subject premises to the exclusion of Lakeview, and that he had put successive tenants into possession of the property, thus frustrating Lakeview's attempts to obtain possession. The pleading further stated that in 1982 Estrada placed Marshall Villarreal (Villarreal) into possession of the premises and that Villarreal

claimed ownership by virtue of his purported control of Grano de Oro, Inc., an Illinois corporation. It was alleged that Villarreal claimed to have purchased all of the stock of the corporation Grano de Oro, Inc., from Estrada.

Lakeview stated that Villarreal had placed Vincente Raygoza (Raygoza) in possession of the premises as tenant pursuant to a written lease (of which Lakeview was not in possession). It alleged that eviction proceedings against Raygoza had been instituted by Lakeview and were dismissed when Raygoza agreed to become the tenant of Lakeview. Thereafter, Villarreal instituted eviction proceedings against Raygoza; Lakeview alleged that Villarreal persisted and continued to refuse to recognize and abide by the trial court's order of December 15, 1980, which Lakeview stated had been shown to him.

Based on these alleged facts, Lakeview requested: (1) an order for a rule to show cause against Estrada without the necessity for separate petition therefor; (2) an order that Villarreal be impleaded as a party-defendant; (3) an order that Villarreal be temporarily and permanently enjoined from asserting or claiming any right, title, or interest in the subject premises and from performing any acts which interfered with the interests of Lakeview and its successor in the subject premises; (4) imposition of a constructive trust upon all funds received by Villarreal from Raygoza, Raygoza's corporation (Jose P. Avila Corp.), and/or third parties on Raygoza's behalf, in relation to Raygoza's occupancy or tenancy of the premises; (5) an order consolidating Lakeview's motion to enforce judgment with Villarreal's eviction action; and (6) such action and different relief as the court deemed just and proper.

Lakeview's request for consolidation was also supported by the motion of Francisco Quezada as administrator of the estate of Luis Quezada (who was apparently "murdered" on January 9, 1981, according to Lakeview's motion for entry of orders of enforcement).[1] Francisco Quezada's motion of consolidation stated that with his intervention in the eviction proceeding, the issues in the cause included ownership of the premises and whether Villarreal or Lakeview was entitled to possession. Quezada further alleged that the trial court's December 1980 order had already determined Lakeview's right, title, and interest in and to the subject premises and that as a result the

---

[1]We note that the proper procedure for substitution of parties in the event of death is contained in section 2—1008(b), which requires that the party's death be suggested of record and a motion entered to substitute the proper party in that person's stead. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1008(b)). According to the documents of record this procedure was not followed by Francisco Quezada here.

two proceedings involved the same issues such that consolidation was proper.

On November 17, Lakeview mailed notice of these motions and its intent to appear before the trial court on November 28 in order to present them, to: Jose Estrada (not Juan Estrada, who was the original defendant in Lakeview's petition for quiet title); Raygoza, the alleged tenant of the premises; an individual named only as "Estrada," at an address other than that of the premises at issue and also other than that given for "Jose Estrada," above; Eduardo Lara, who was Juan Estrada's attorney of record in Lakeview's first action for quiet title; Jose Avila, Inc. (on whose behalf Raygoza was a tenant of the premises); Villarreal; and Gary Swenson, an attorney (who was Villarreal's attorney of record in Villarreal's eviction action against Raygoza). The record does not disclose whether summons was ever served on any of these individuals, nor on any other persons. The pleadings of Lakeview and Quezada, and the notices of motion sent by them, were filed of record on November 28, 1983. There are no documents in the record on behalf of any of the parties to whom notice was sent which serve as any form of response or objection to the pleadings of Lakeview Bank or Quezada.

The trial court entered its order upon Lakeview's motion on November 28. It stated, verbatim and in full:

### "ORDER

This Cause Coming on Petitioner's Petition for entry of orders of enforcement, due notice having been given, the following named parties in interest responding; Mrs. Juan Estrada, Marshall Villarreal and Vincente Raygoza, both individually and on behalf of Jose Avila Inc., and the court being advised:

The court finds as follows:

1. On December 15, 1983, this court entered an order quieting title to the subject premises, said title having been found to be in the Plaintiff.

2. Marshall Villarreal claims an interest in the subject premises by virtue of the claimed ownership of the stock of a corporation known as 'Grano de Oro, Inc.' which stock he claims to have acquired from the original defendant herein, Juan Estrada.

3. That unless this court acts, Marshall Villarreal, individually and/or on behalf of the corporation GRANO DE ORO, INC. will continue to exert control over the subject premises in contra-

vention of the order of this court of December 15, 1980.

IT IS HEREBY ORDERED AS FOLLOWS:

1. The requirement of a Petition for Rule to Show Cause be and is waived and A Rule to Show Cause be and is issued returnable to this court on 18 January 1984.

2. Marshall Villarreal and Grano de Oro, Inc. be and are impleaded as a parties defendant.

3. Marshall Villarreal, his agents, servants, employees and attorneys be and are permanently enjoined from asserting or claiming any right, title or interest in the subject premises unless such is by and through the chain of title of Plaintiff or its successors in interest; and they are further enjoined from performing any acts which interfere with Plaintiff's and its successors in interest's quiet enjoyment of the subject premises.

4. Grano de Oro, Inc., its officers, directors, agents, servants, employees and attorneys be and are permanently enjoined from asserting or claiming any right, title or interest in the subject premises unless such is by and through Plaintiff or its successor in interest, and they are permanently enjoined from performing any acts which interfere with Plaintiff's and its successors in interest's quiet enjoyment of the subject premises.

5. Petitioner's motion to consolidate case 83 M1 101805 into this cause be and is entered and transferred to the Chief Judge of the Chancery Division (Room 2403) for hearing on November 29, 1983 at 10:00 A.M. without further notice."

There is no transcript of any hearings held before the trial court regarding the motions upon which it ruled on November 28. Orders consolidating Lakeview's enforcement proceeding and Villarreal's eviction proceeding were entered on November 28 and 29.

Villarreal filed his motion to vacate the November 28 order on December 21, 1983. As ultimately amended, the motion claimed in substance that the November 28 order should be vacated because the order had been entered without notice to him and without providing him an opportunity to respond. He further argued that Grano de Oro, Inc., had never been allowed to assert or be heard on the ownership of the subject premises and that a gross injustice would result if this were allowed to stand. Villarreal contended that Lakeview and Quezada were attempting to use the findings of the trial court's order of December 15, 1980, as a conclusive finding of ownership of Lakeview Bank in the subject premises as against the whole world and in particular against Grano de Oro, Inc., when in fact there was no such finding.

Villarreal requested that the November 28 order be vacated and that the cause be set down for further hearing. The attorney representing Villarreal and Grano de Oro, Inc., at this point was Gary W. Swenson. There is no appearance with regard to him on behalf of Villarreal and Grano de Oro, Inc., in Lakeview's enforcement proceeding in the record on appeal.

Lakeview Bank resisted the motion to vacate on the grounds that: (1) Villarreal and Grano de Oro, Inc., "have failed to properly raise any new matters to warrant vacation of the order of November 28, 1983"; (2) Villarreal and Grano de Oro, Inc., "do not appear in the chain of title nor do they allege that either appears other than by misnomer and so asserts without factual allegations but by conclusionary statements alone"; (3) Villarreal and Grano de Oro, Inc., failed to make factual allegations but instead stated by conclusionary pleadings the supposed intention of the parties to the original transaction; (4) the motion was insufficient in law; (5) the motion failed to allege any equitable defenses to warrant vacation. The motion was filed of record on April 10, 1984. Notice of the motion and a copy thereof were sent by mail to Gary Swenson on March 26. There is nothing in the record to serve as a reply by Villarreal and Grano de Oro, Inc., to Lakeview's response to their motion to vacate.

The trial court entered its judgment dismissing the motion to vacate with prejudice on April 10, 1984. The court gave no specific reasons for its judgment. It found no just reason to delay enforcement or appeal. There is no transcript of any hearing in the record before us.

The record indicates that the trial court dismissed the forcible entry and detainer action of Villarreal and Grano de Oro, Inc., against Jose P. Avila, Inc., on May 3, 1984.

Villarreal and Grano de Oro, Inc., filed their notice of appeal on May 7, 1984. The notice seeks to appeal from the order of April 10, 1984, which denied their motion to vacate the trial court's order of November 28, 1983.

On August 24, 1984, Lakeview Bank filed its motion to dismiss the appeal or in the alternative strike portions of the appellant's brief. It alleged in substance that the brief attempted to litigate matters decided in 1980 and 1981 and from which no appeal was taken, and further raised arguments which had never been presented to the trial court. Appellants responded to the motion to dismiss and denied that they were attempting to argue issues raised in the trial court's previous proceedings. Pursuant to this court's order entered October 29, 1984, Lakeview Bank's motion to dismiss was denied; that part of the motion seeking to strike certain portions of the brief was taken with

the case on appeal. As hereinafter explained, Lakeview's motion to strike is denied.

OPINION

I

The initial issue we must consider is the proper scope of our inquiry into the propriety of the various orders entered by the court below. The specific question first to be resolved in this regard is whether this court has appellate jurisdiction to review the trial court's November 1983 order against Villarreal and Grano de Oro, Inc. The notice of appeal filed by them referred only to the trial court's order of April 1984 which denied their motion to vacate the November 1983 order. Lakeview argues that their failure to refer specifically to the November 1983 order in the notice of appeal effectively deprives this court of any appellate jurisdiction to consider the merits of the November 1983 order.

■■ Illinois Supreme Court Rule 303(c)(2) provides that a notice of appeal "shall specify the judgment or part thereof appealed from and the relief sought from the reviewing court." (87 Ill. 2d R. 303(c)(2).) Where a trial court's order is final but nonetheless nonappealable because of its failure to recite that there is no just reason to delay enforcement or appeal (87 Ill. 2d R. 304(a)), a notice of appeal which specifies a subsequent, final and appealable order draws into question all prior nonfinal rulings and final but nonappealable orders which produced the judgment. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433, 394 N.E.2d 380.) Thus, where the notice adequately sets forth the judgment complained of and the relief sought so that the successful party is advised of the nature of the appeal, a technical defect in the form of the notice through the failure to specify any earlier nonappealable ruling is not fatal to the appellate court's jurisdiction to review such prior orders. *In re Estate of Malloy* (1981), 96 Ill. App. 3d 1020, 1024, 422 N.E.2d 76; *Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 104, 392 N.E.2d 716.

■■ The November 1983 order which Lakeview argues is not subject to our jurisdiction was not a final and appealable order pursuant to Illinois Supreme Court Rule 304(a). (87 Ill. 2d R. 304(a).) This is so because the order did not finally determine the liabilities of all of the parties involved in the litigation. (See *Petersen Brothers Plastics, Inc. v. Ullo* (1978), 57 Ill. App. 3d 625, 630, 373 N.E.2d 416.) Instead it determined only the interests of Estrada, Villarreal, and Grano de Oro, Inc., and left pending Villarreal's eviction action against his ten-

ant Raygoza, which cause the trial court ordered to be consolidated with Lakeview's action to enforce the trial court's order of December 1980. Because the court's order of November 1983 did not also state that there was no just reason to delay enforcement or appeal, the order was not immediately appealable. (See *Wilburn v. City of Chicago* (1984), 123 Ill. App. 3d 744, 747, 463 N.E.2d 789.) Moreover the trial court made such finding of enforcement and appealability only in its subsequent order of April 1984 by which the court denied Grano de Oro's motion to vacate the November 1983 order. As a result, appeal from the April 1984 order automatically called into question the prior November order without the need of specific reference to this earlier order in the notice of appeal to this court. Accordingly, we conclude that we have appellate jurisdiction to review both the court's order of April 1984 as well as that of November 1983.

## II

We turn then to a consideration of the merits of the trial court's order of November 1983 which joined Villarreal and Grano de Oro, Inc., as party-defendants and enjoined them from asserting any right, claim, interest or title in or to the subject premises. Although neither party has fully briefed or discussed the question of whether joinder of Villarreal and Grano de Oro, Inc., was properly accomplished, we are obligated to address this question *sua sponte* in some detail because of our concern over Lakeview's failure to cause summonses to be served upon either of them and the resulting possibility that the November 1983 order was consequently void *ab initio*. See *Allied American Insurance Co. v. Mickiewicz* (1984), 124 Ill. App. 3d 705, 707, 464 N.E.2d 1112.

Our research indicates that the procedure by which a final judgment may be enforced against one not a party to the original proceeding which resulted in such judgment is set forth in section 2—1008 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1008.) Subsection (a) of that provision states in full (Ill. Rev. Stat. 1983, ch. 110, par. 2—1008(a)):

"(a) Change of interest or liability. If by reason of marriage, bankruptcy, assignment, or any other event occurring after the commencement of a cause or proceeding, either before or after judgment, causing a change or transmission of interest or liability, or by reason of any person interested coming into existence after commencement of the action, it becomes necessary or desirable that any person not already a party be before the court, or that any person already a party be made a party in another

capacity, the action does not abate, but on motion an order may be entered that the proper parties be substituted or added, and that the cause or proceeding be carried on with the remaining parties and new parties, with or without a change in the title of the cause."

In addition, subsection (e) of section 2—1008 states that "[p]arties against whom relief is sought, substituted under subsection (a) hereof, shall be brought in by service of process ***." Ill. Rev. Stat. 1983, ch. 110, par. 2—1008(e).

We question whether the procedure set forth in section 2—1008 was properly followed by Lakeview in the instant cause with regard to either Villarreal or Grano de Oro, Inc. Initially, we observe that the record is devoid of any indication whatsoever that service of process was ever attempted as to either of them. Although the record does show that notice of Lakeview's motion was sent to Villarreal (but not to Grano de Oro, Inc.), this was not sufficient in itself to confer jurisdiction upon the court. "Jurisdiction over a person cannot be had by serving him with a notice; a court acquires jurisdiction over a person only after proper service of summons." *Augsburg v. Frank's Car Wash, Inc.* (1982), 103 Ill. App. 3d 329, 333, 431 N.E.2d 58.

■ We also note that according to the court's order of November 28, 1983, Villarreal appeared in court on that date. The nature of his appearance is unclear, however, as no transcript of the proceedings is included in the record before us. Generally a party's appearance before the trial court with no contest of the court's jurisdiction constitutes a waiver of any claim that failure to serve summons deprived the court of jurisdiction. (Ill. Rev. Stat. 1983, ch. 110, par. 2—301; see *Hutchinson v. Brotman-Sherman Theatres, Inc.* (1981), 94 Ill. App. 3d 1066, 1075, 419 N.E.2d 530.) With no transcript of the trial court's proceedings before us, we must conclude that Villarreal's appearance before the court on November 28 was general in nature (see *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92, 459 N.E.2d 958) such that the court obtained *in personam* jurisdiction over him. As a result we are obligated to conclude that the order, as it applied to Villarreal, was not void for lack of service of summons. Nevertheless we feel compelled to admonish the improper procedure by which such jurisdiction was obtained.

Furthermore we observe that although the trial court's order states that Villarreal had appeared before it, the decree does not specify that this appearance was performed in Villarreal's capacity as corporate representative of Grano de Oro, Inc. In fact the order does not provide that any party appeared on behalf of Grano de Oro, Inc.

There is in addition no evidence in the record that Grano de Oro, Inc., was served with summons to appear at the proceeding.

■ Service upon a private corporation may generally be accomplished "by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State ***." (Ill. Rev. Stat. 1983, ch. 110, par. 2—204(a).) Nevertheless, no service can be obtained upon a corporation by serving one of its purported officers personally, as an individual. (*Leonard v. City of Streator* (1983), 113 Ill. App. 3d 404, 408, 447 N.E.2d 489.) The appearance of such officer in his personal capacity similarly does not constitute the appearance of the corporation, as there is no authorization for a "corporation to appear in any proceeding in any court through an agent who is not a licensed attorney. [Citations.]" (*Housing Authority v. Tonsul* (1983), 115 Ill. App. 3d 739, 740, 450 N.E.2d 1248; see Ill. Rev. Stat. 1983, ch. 13, par. 11.)[2] Villarreal's appearance before the trial court thus had no effect or bearing upon any appearance by Grano de Oro, Inc. Since the corporation did not appear generally before the trial court,[3] judgment against Grano de Oro, Inc., by the court on November 28, 1983, was void for lack of *in personam* jurisdiction.

III

In addition to our reservations regarding the irregular procedure by which Grano de Oro, Inc., and Villarreal were made party-defendants to Lakeview's proceeding to quiet title, we also question the failure of the trial court to permit them formally to answer or otherwise respond to Lakeview's pleading before the entry of any judgment against them.

---

[2]In fact "[w]here a cause is prosecuted by a layman acting on behalf of a corporation, any proceedings in the case are a nullity and any judgment rendered therein is void. [Citations.]" *Housing Authority v. Tonsul* (1983), 115 Ill. App. 3d 739, 740.

[3]We note that Grano de Oro's motion to vacate the court's November 1983 order specifically contended that vacation was appropriate because it had not been properly notified of Lakeview's motion to enforce the December 1980 order against it. Consequently Grano de Oro's motion to vacate did not constitute in substance a general appearance before the trial court which would have conferred upon the court any *in personam* jurisdiction over Grano de Oro, Inc. We further question whether the substance of such motion could in any event be construed as a general appearance on the part of Grano de Oro, Inc., such that the trial court obtained *in personam* jurisdiction over it. "Illinois courts have held that where a judgment is void when entered, it remains void notwithstanding subsequent general appearances and, that a general appearance does not serve to validate retroactively a judgment void when entered. [Citations.]" *J.C. Penney Co. v. West* (1983), 114 Ill. App. 3d 644, 449 N.E.2d 188.

■ The right to notice and an opportunity to be heard and present a defense is of constitutional proportion. (U.S. Const., amend. XIV; Ill. Const., art. 1, sec. 2; see *Chicago Land Clearance Com. v. Darrow* (1957), 12 Ill. 2d 365, 369, 146 N.E.2d 1; *Martin v. Strubel* (1937), 367 Ill. 21, 24, 10 N.E.2d 325.) Procedural due process requires that a person be given notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the cause. (*City of Chicago v. Cohn* (1927), 326 Ill. 372, 374-75, 158 N.E. 118; *Nye v. Parkway Bank & Trust Co.* (1983), 114 Ill. App. 3d 272, 274, 448 N.E.2d 918; *Pettigrew v. National Accounts System, Inc.* (1966), 67 Ill. App. 2d 344, 350, 213 N.E.2d 778.) "Due process of law is served where there is a right to present evidence and argument in one's own behalf, a right to cross-examine adverse witnesses, and impartiality in rulings upon the evidence which is offered. [Citation.]" (*Piotrowski v. State Police Merit Board* (1980), 85 Ill. App. 3d 369, 373, 406 N.E.2d 863.) "The right to plead, according to the general law and established rules, is implicit in any concept of ordered liberty and fairness and is required by a right sense of justice. [Citation.]" *Pettigrew v. National Accounts System, Inc.* (1966), 67 Ill. App. 2d 344, 352, 213 N.E.2d 778.

As applicable to the case at bar, the time period in which a party should be entitled to respond is set forth in relevant part in Illinois Supreme Court Rules 13(b), 101(d), and 181(a). (87 Ill. 2d R. 13(b); 87 Ill. 2d R. 101(d); 87 Ill. 2d R. 181(a).) Rule 13(b) provides that "[a] party who appears without having been served with summons is required to plead within the same time as if served with summons on the day he appears." (87 Ill. 2d R. 13(b).) Because of the nature of Lakeview's claim, and assuming, *arguendo*, that Grano de Oro, Inc., had appeared before the court on November 28 as did Villarreal, both Villarreal and Grano de Oro, Inc., should have been allowed to file their answers or to otherwise plead to the cause within 30 days after an appearance on November 28, at which time they were joined as party-defendants in the proceeding pursuant to the court's order of that same day. See 87 Ill. 2d R. 101(d); 87 Ill. 2d R. 181(a).

Neither Villarreal nor Grano de Oro, Inc., was provided any opportunity to enter formal responsive pleadings to Lakeview's motion to enforce the December 1980 order against them, however. Instead, pursuant to a single hearing at which only Villarreal appeared without representation of counsel, both were not only joined as party-defendants but were also adjudicated to have no interest in the subject property and were moreover permanently enjoined from asserting that either had any right or title therein. Although we have no transcript of

the court's proceedings in the record before us, nevertheless, in view of the court's failure to allow them any opportunity formally to answer and defend on their claims, we feel compelled to conclude that Villarreal and Grano de Oro, Inc., were deprived of their due process rights to meaningfully defend their claims and interests before the court below. Accordingly, we determine that the court's judgment of November 1983 was reversible error.

## IV

■ As an alternative holding to our conclusions discussed above that the November 1983 order was void as to Grano de Oro, Inc., for failure to effect service and reversible error as to both Grano de Oro, Inc., and Villarreal for failure to allow them their due process right to answer and be heard upon their claims, we also hold that the November 1983 order was erroneous as being against the manifest weight of the evidence.

A motion to enforce a final judgment against an individual who was not a party to the prior proceeding which resulted in the final judgment is properly granted where an "event occurring after the commencement of a cause or proceeding *** [and] after judgment [therein], cause[s] a change or transmission of interest or liability" from the original named defendant to his successors or assigns. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1008; see *Guyer v. Wookey* (1857), 18 Ill. 536; *Stavros v. Karkomi* (1976), 39 Ill. App. 3d 113, 349 N.E.2d 599.) The procedure has long been recognized in this State. As the Illinois Supreme Court stated in *Oberein v. Wells* (1896), 163 Ill. 101, 110-11, 45 N.E. 294:

> " 'A bill to carry a decree into execution is proper, where, after a decree has been pronounced, it has happened that, owing to some neglect of the parties to proceed upon the decree, their rights have become so embarrassed by subsequent events that no ordinary process of the court upon the first decree will serve, and it is therefore necessary to have another decree of the court to ascertain and enforce them.' Story's Eq. Pl. sec. 429; Daniell's Ch. Pr. p. 1508, sec. 7; Adam's Eq. 415."

An action to enforce a judgment "is a dependent suit and will be considered for what its allegations declare it to be, [citations] and may be brought by a party to the suit in which the decree was rendered, or one in privity with him. [Citations.]" (*Kohl v. Montgomery* (1942), 379 Ill. 579, 583, 41 N.E.2d 762.) Thus, in order to prevail in its motion to enforce the December 1980 order, Lakeview had the burden of proving that Villarreal and Grano de Oro, Inc., were successors in in-

terest to Estrada, d/b/a Grano del Oro, the original defendant in its action to quiet title.

Lakeview's motion of enforcement alleged that Villarreal claimed ownership of the subject property by virtue of his purchase of all of the corporate stock of Grano de Oro, Inc., from Estrada, and that as a result of such purchase Villarreal claimed control of Grano de Oro, Inc. We infer that Lakeview also meant that Villarreal specifically claimed ownership of the property pursuant to the June warranty deed which named Grano de Oro, Inc., as grantee under the deed. Thus we determine that Lakeview alleged in essence that Villarreal and Grano de Oro, Inc., stood as successors in interest to Estrada, d/b/a Grano del Oro, Inc., the original named defendant in Lakeview's action to quiet title, because the purchase of the corporation of Grano de Oro, Inc., placed them in privity of contract.

There is nothing in the record to serve as formal offer of proof of Villarreal's actual purchase of the corporate stock of Grano de Oro, Inc., however, nor of any modifications of its corporate records to establish Villarreal's assumption of any corporate role therein. Moreover the trial court's finding made no conclusive determination of fact in this regard. Instead the court found that Villarreal *"claims* an interest in the subject premises by virtue of the *claimed* ownership of the stock of a corporation known as 'Grano de Oro, Inc.' which stock he *claims* to have acquired from the original defendant herein, Juan Estrada."* On this basis alone the trial court's judgment was reversible error as against the manifest weight of the evidence, as Lakeview failed to prove that Villarreal and Grano de Oro, Inc., stood in privity of contract with Estrada doing business as Grano del Oro, Inc., or that they otherwise were successors in interest to the original named defendant to Lakeview's action to quiet title.

Furthermore, even assuming *arguendo* that Lakeview could prove affirmatively that Villarreal had purchased all stock of Grano de Oro, Inc. from Estrada and had further become its corporate officer, such evidence would not in our view justify enforcement of the December 1980 order against Villarreal and Grano de Oro, Inc. This proof would in any event be insufficient to establish a privity of contract between Estrada d/b/a Grano del Oro, Inc., and Villarreal and Grano de Oro, Inc. We reach this conclusion because Grano de Oro, Inc., *was never a party to the December 1980 order and in fact was precluded from becoming such party by both Lakeview's motions and the trial court's orders thereon.* The December 1980 order which quieted title in Lakeview named only Estrada, d/b/a Grano *del* Oro, Inc., as party defendant. It did not refer to Grano *de* Oro, Inc. Indeed it was never in-

tended to adjudicate the interest of Grano de Oro, Inc., in the subject premises as both Grano de Oro's counterpetition as well as its later petition to intervene were dismissed by the trial court. Accordingly, on this basis the trial court's judgment was further reversible error as being against the manifest weight of the evidence.

## V

■ In fact, because we conclude that Grano de Oro, Inc., was never a party to the earlier December 1980 order and the proceedings which resulted therein, we must inquire into whether Grano de Oro, Inc., was a necessary and indispensable party to that action such that failure to join it therein rendered the December 1980 order *ab initio*. We note that such failure to join a necessary and indispensable party may be raised at any time, either by the parties or the trial court or appellate court *sua sponte.* (*Lerner v. Zipperman* (1979), 69 Ill. App. 3d 620, 625-26, 387 N.E.2d 946; *Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 156, 362 N.E.2d 382.) This is so because due process requires the joinder of all indispensable parties to an action; as a result an order entered without jurisdiction over a necessary party is void. *In re Annexation to Village of Downers Grove* (1980), 86 Ill. App. 1089, 1090, 408 N.E.2d 761; *Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 156, 362 N.E.2d 382.

A person is a necessary and indispensable party to the litigation when he has an interest in the subject matter of the suit which may be materially affected by a judgment entered in his absence. (Ill. Rev. Stat. 1983, ch. 110, par. 2—407(a); *Consolidated Cable Utilities, Inc. v. City of Aurora* (1982), 108 Ill. App. 3d 1035, 1039, 439 N.E.2d 1272; *Pliske v. Yuskis* (1980), 83 Ill. App. 3d 89, 95, 403 N.E.2d 710.) The relevant inquiry is not whether the court's judgment has in fact materially affected the absent individual's interest in the subject matter in controversy; instead, it is whether the absent person "might claim a substantial and present interest" (*Lain v. John Hancock Mutual Life Insurance Co.* (1979), 79 Ill. App. 3d 264, 269, 398 N.E.2d 278) which determines that he is a necessary and indispensable party.

The question presented is thus whether Grano de Oro, Inc., had a present interest in the subject premises which might have been materially affected by the court's judgment upon Lakeview's petition for quiet title. In order to resolve this question, we consider the nature of such a proceeding.

An action to quiet title in property is an equitable proceeding wherein a party seeks to settle a dispute over ownership of property or to remove a cloud upon his title to the property. (*Krile v. Swiney*

(1952), 413 Ill. 350, 109 N.E.2d 189; *Atchison, Topeka & Santa Fe Ry. Co. v. Stamp* (1919), 290 Ill. 428, 125 N.E. 381; *Hooper v. Bank of Two Rivers* (1914), 263 Ill. 400, 105 N.E. 311.) "A cloud on title is said to be the semblance of a title, either legal or equitable, or a claim of an interest in lands, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce. [Citations.]" *(Yeates v. Dailey* (1958), 13 Ill. 2d 510 514, 150 N.E.2d 159; see also *Dodsworth v. Dodsworth* (1912), 254 Ill. 49, 51-52, 98 N.E. 279.) Various forms of documents which appeared valid on their face have been held to constitute clouds upon title. *Johnston v. Masterson* (1947), 397 Ill. 168, 172, 73 N.E.2d 401 (subsequent deed to second grantee); *Johnson v. Riedler* (1946), 395 Ill. 412, 417, 70 N.E.2d 570 (recorded mortgage); *Oswald v. Newbanks* (1929), 336 Ill. 490, 496, 168 N.E. 340 (forged deed); *Farrar v. Payne* (1874), 73 Ill. 82, 89-92 (deed outside chain of title); *Moore v. Munn* (1873), 69 Ill. 591, 594-95 (deed procured by fraud).

A plaintiff suing to remove a cloud from title must be in possession of the property *(McGookey v. Winter* (1943), 381 Ill. 516, 526-27, 46 N.E.2d 84) unless the property at issue is vacant and undeveloped *(Hooper v. Traver* (1929), 336 Ill. 275, 278, 168 N.E. 326) or other grounds of equitable relief such as mistake or fraud are established. *(Barger v. Slayden* (1952), 411 Ill. 237, 240, 103 N.E.2d 645.) Where the property is not vacant and is not in the possession of the party seeking to remove the cloud from his title, the proper remedy is not an action for quiet title but rather an action in ejectment. *McGookey v. Winter* (1943), 381 Ill. 516, 527, 46 N.E.2d 84; *Gage v. Abbott* (1881), 99 Ill. 366, 367; *Mahrenholz v. County Board of School Trustees* (1984), 125 Ill. App. 3d 619, 629-30, 466 N.E.2d 322.

"It is a fundamental requirement in an action to quiet title or in an action to remove a cloud from a title that the plaintiff must recover on the strength of his own title, although it is not required that a perfect title be established." *(Reynolds v. Burns* (1960), 20 Ill. 2d 179, 193, 170 N.E.2d 122.) Thus where a plaintiff has no title in himself, he cannot claim that there is a cloud upon title. *(Ford v. Witwer* (1943), 383 Ill. 511, 514, 50 N.E.2d 714; *Klingel v. Kehrer* (1980), 81 Ill. App. 3d 431, 439, 401 N.E.2d 560; *Aebischer v. Zobrist* (1977), 56 Ill. App. 3d 151, 154, 371 N.E.2d 1003.) An action for quiet title or to remove a cloud on title should join as parties all persons who may have a substantial interest therein and who will be materially affected by the decree. See *Hobbs v. Pinnell* (1959), 17 Ill. 2d 535, 536, 162 N.E.2d 361; *Rush v. Hubbart* (1946), 393 Ill. 228, 237, 65 N.E.2d 681; *Getzelman v. Blazier* (1903), 112 Ill. App. 648, 651; see also *State ex*

*rel. Department of Transportation v. Tolke* (1978), 36 Or. App. 751, 753, 586 P.2d 791, 792; *Woodland v. Woodland* (N.D. 1966), 147 N.E.2d 590, 602.

▉ Based upon our review of the parties' pleadings and the pertinent documents filed of record before us, we conclude that Grano de Oro, Inc., was a necessary and indispensable party to the December 1980 proceeding and that the trial court's judgment therein was consequently void. That Grano de Oro, Inc., had an interest in the property which might be materially affected by the court's judgment is abundantly clear from the record.

First, the SBA mortgage which specified Grano de Oro, Inc., as mortgagor and which had been recorded in Cook County gave it an interest in the property subject to the mortgage, an interest which could be materially diminished if title in the property were found to be in Lakeview, as any such finding would mean in essence that any payments Grano de Oro, Inc., would make upon the SBA mortgage would be for property not owned by the corporation.[4]

More importantly, however, Grano de Oro, Inc., had a valid claim for clear title to the property.[5] In its appellate brief, it has detailed two arguments upon which it relies to establish that it had, or should have, such clear title. These contentions are:

1. "Where parties intend to pass a present estate to an existing grantee but [do so] under a name other than the correct one, such conveyance passes title to the intended grantee."

2. "A deed must have a grantee in esse in whom title can and must immediately vest[;] the grantee named must be a person, natural or artificial, capable of taking title at the time of the conveyance."

Lakeview contends before this court that Grano de Oro, Inc., has waived argument of either of these points because neither claim was raised before the trial court. Lakeview further argues that Grano de Oro, Inc., is precluded from presenting any of the arguments it did make before the trial court because those issues are not raised in its appellate brief before this court. We note that at oral argument Grano de Oro, Inc., raised many of the same questions it presented below and that Lakeview Bank responded to these contentions at oral argu-

---

[4]Since the SBA is not a party to this appeal, we do not consider whether it was also a necessary and indispensable party.

[5]We note that the June warranty deed gave the corporation at least colorable title to the property. (See *Yeates v. Daily* (1958), 13 Ill. 2d 510, 514, 150 N.E.2d 159.) If Grano de Oro, Inc. could prove that it was in possession of the property for seven years and paid the real estate taxes thereon throughout that period, it may be entitled to clear title. See Ill. Rev. Stat. 1983, ch. 110, par. 13—109.

ment as well.

Illinois Supreme Court Rule 341(e)(7) (87 Ill. 2d R. 341(e)(7)) provides in pertinent part that "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." The rule is not a limitation on the jurisdiction of the court of review however but instead serves as an admonition to the parties. (*Siebach v. Pienta* (1978), 60 Ill. App. 3d 645, 647, 377 N.E.2d 393.) As such, " 'the rule of waiver is a limitation on the parties and not on the courts, and a reviewing court may ignore the waiver rule in order to achieve a just result.' [Citations.]" (*People v. Hoskins* (1984), 101 Ill. 2d 209, 219, 461 N.E.2d 941, *cert. denied* (1984), 469 U.S. 840, 83 L. Ed. 2d 81, 105 S. Ct. 142.) This standard applies both where a party fails to present questions raised below as well as where a party presents issues for the first time on appeal. *People v. Hoskins* (1984), 101 Ill. 2d 209, 219.

■■ We believe that the interests of justice in this cause would best be served by our consideration of the arguments stated above raised by Grano de Oro, Inc., before this court. We note that to the extent that Grano de Oro, Inc., contended before the trial court that it had a valid claim to title in the subject premises, its arguments here are outgrowths of such contention.[6]

Lakeview's only substantive response to these claims, presented either to the trial court or to this court upon review, has been limited to the contention that Villarreal and Grano de Oro, Inc., "do not appear in the chain of title nor do they allege that either appears other than by misnomer and so asserts without factual allegations but by conclusionary statements alone."

■■ We find Lakeview's arguments to be wholly inadequate and without merit. Grano de Oro, Inc., and Estrada and Villarreal have consistently maintained that it was Grano de Oro, Inc., which purchased the property and obtained the SBA mortgage, that the named grantee in the first warranty deed recorded in Cook County was in error, and that this error was corrected and the deed re-recorded. Grano de Oro, Inc., has further correctly argued that a valid deed is one which names as grantee a party in existence at the time of the conveyance, citing *Herrick v. Lain* (1941), 375 Ill. 569, 32 N.E.2d 154. It has also contended that no conveyance to El Grand del Oro, Inc., in 1978 could have been valid since that business entity was not

---

[6]The other arguments raised by Grano de Oro, Inc., before this court go far afield from the questions of title to the property with which we are presently concerned. As a result, we will not address those issues here.

incorporated until 1980; counsel for Lakeview affirmatively stated to this court at oral argument that el Grand del Oro, Inc., was indeed incorporated only in 1980. Moreover, Grano de Oro, Inc., has claimed that valid title to the subject premises rested in it, as the first warranty deed misstated its corporate name and instead should have stated that the grantee was Grano de Oro, Inc. It correctly points to the rule which permits a court to recognize that a deed has inadvertently misstated the named grantee, citing *Church of Christ v. Christian Church* (1901), 193 Ill. 144, 61 N.E. 1119; *Preachers' Aid Society v. England* (1883), 106 Ill. 125. Both of these valid claims were adversely affected by the trial court's judgment of December 1980 as the court ruled that the June deed was null and void and thereby destroyed any interest of Grano de Oro, Inc. in the premies. For these reasons, we conclude that failure to join Grano de Oro, Inc., in the proceedings which resulted in the trial court's order of December 1980 rendered that order void *ab initio*.[7] The judgment entered therein is accordingly vacated.

For the reasons stated above, the trial court's judgments and orders of December 15, 1980, November 28, 1983, and April 10, 1984, are reversed or vacated and the cause remanded for further proceedings consistent with the views expressed herein.

Reversed or vacated, and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.

---

[7]We note parenthetically that we also question whether the order was void and a nullity on the ground that it adversely adjudged the interest of Estrada, d/b/a Grano del Oro, Inc., whose existence as an Illinois corporation or other form of business entity was never clearly established of record. It is well settled that a judgment in a suit against an entity which is legally nonexistence is void *ab initio*. See *Lewis v. West Side Trust & Savings Bank* (1941), 377 Ill. 384, 385, 36 N.E.2d 573; *Bavel v. Cavaness* (1973), 12 Ill. App. 3d 633, 637, 299 N.E.2d 435.