ROBERT J. NYE, Plaintiff-Appellee, *v.* PARKWAY BANK & TRUST COMPANY, Defendant-Appellant.

First District (5th Division)   No. 81—2817

Opinion filed April 15, 1983.

Arnold I. Kramer, of Chicago, for appellant.

Van Emden, Busch & Van Emden, of Chicago (George J. Van Emden, of counsel), for appellee.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

This action arises out of an alleged contract for legal services by and between Robert J. Nye, attorney, and C. Frederick Potter, as president and chief executive officer of Parkway Bank and Trust Company (Parkway), Harwood Heights, Illinois. In March 1974, Parkway allegedly retained Nye as legal counsel in respect to an action entitled *Stavros v. Karkomi*, 70 CH 5070, and continued to retain Nye for the subsequent appeal.[1] When Nye did not receive payment in full

---

[1]The record, at best, is circumlocutory and contradictory regarding the retention of Nye's legal services. Arnold Kramer, defense counsel in the instant case, is general counsel for Parkway. Occasionally, acting as agent for Parkway, Kramer retains Nye either as co-counsel or sole counsel to represent Parkway in certain legal matters. When Nye performs legal services for Parkway, it is his practice to bill Parkway directly and send copies of the billing to Kramer. Payment is generally received from Kramer. In addition to the Parkway account, the record indicates that Nye also has

for services rendered, he filed a complaint requesting attorney fees in the amount of $13,944.73. Parkway answered by denying that it had retained Nye as legal counsel in the Stavros II matter, and consequently, denied owing Nye payment for services rendered. At trial, Nye was called on his own behalf as the first witness. After cross-examination of Nye, but before plaintiff rested his case and before defendant had the opportunity to present his defense, the trial court entered judgment for plaintiff in the amount of $6,919.88.[2] Defendant's timely appeal followed.

The issues before this court are: (1) whether the trial court violated defendant's due process rights when it rendered judgment without allowing defendant the opportunity to present its defense; (2) whether, in an action for attorney fees, the mere allegation of an account stated is sufficient to allege the liability of a client; and (3) whether a client is bound to pay for the services of an employee of the attorney he hired when he did not give his consent for that employee to perform services for him. For the reasons that follow, we reverse and remand the trial court's decision on the ground that

an open account for Kramer, individually. Whether this account is for services rendered to Kramer, personally, or for services rendered to clients of Kramer is unclear.

In August 1971, Kramer retained Nye as co-counsel for the original Stavros cause of action (Stavros I). Although Stavros I has been resolved, there remains a balance due on Kramer's personal account with Nye for services rendered. The cause of action for which Nye is currently seeking attorney fees (Stavros II) arose subsequent to and is independent from Stavros I. Again, Nye represented Parkway in the Stavros II matter at Kramer's request. A confirmation letter formally retaining Nye was written by C. Frederick Potter, as president and chief executive officer of Parkway. Pursuant to practice, bills for services rendered on the Stavros II matter were sent directly to Parkway and periodic payments were made for Parkway by Kramer.

To further add to the factual morass of the case at bar, the record indicates that Parkway was not at any time a party-defendant in Stavros II. Rather, it was a respondent to a motion seeking enforcement of a judgment against a land trust for which Parkway is trustee and Kramer is a beneficiary.

[2]Although the complaint stated an amount due of $13,944.73, Nye admitted at trial that this amount was incorrect for two reasons: (1) Nye had originally quoted Kramer an hourly fee of $60; however, Nye inadvertently charged $75 per hour at various times and, thus, a credit was due; and (2) Nye did not credit the Parkway account for a payment received before the complaint was filed. As a result, the amount due was amended at trial, without prior notice to defendant, to $6,919.88. At this juncture, we wish to express our concern over the blatant disregard for accuracy of pleadings which Nye has demonstrated. At trial, Nye admitted that he had received a payment on the account prior to filing the complaint which he simply did not take into consideration, yet he offered no explanation for his inaction. It strikes us as highly irregular and inequitable to expect a defendant to prepare a defense against accusations known to be untrue by the accuser.

defendant was denied its constitutional due process rights by the manner in which the trial court conducted the proceedings below.

OPINION

The procedural aspects of due process and equal protection of the laws require that a person be given notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the case. (*City of Chicago v. Cohn* (1927), 326 Ill. 372, 374-75, 158 N.E. 118.) In *Pettigrew v. National Accounts System, Inc.* (1966), 67 Ill. App. 2d 344, 351, 213 N.E.2d 778, the court stated:

> "A fundamental requisite of procedural due process is that every man shall have the protection of his day in court and the benefit of an orderly proceeding according to the general law or established rules; and that the hearing shall not be arbitrary, but rather shall afford to him an opportunity to be heard in his defense and shall assure to him an inquiry on the issues of the case, wherein judgment is rendered only after trial."

Applying the aforementioned standards to the case at bar, we find that Parkway was not afforded procedural due process as guaranteed by section 1 of amendment XIV of the Federal Constitution and section 2 of article II of the Illinois Constitution. The record is replete with examples of a trial procedure so lacking in the fundamental principles of our system of justice that the procedure must be condemned as a denial of due process rights.

First, trial commenced by order of the court before arrival of the requested court reporter, resulting in an incomplete record for appeal.[3] During oral argument, appellant explained that because the official court reporters had gone for the day, he had ordered a private court reporter. After waiting approximately 10 minutes for the reporter to arrive, the court ordered that the proceedings begin. As a result, the transcript before this court commences a few minutes into the direct examination of Nye, the first witness.

Subsequently, during cross-examination regarding several folders introduced into evidence purported to contain all the work done on Stavros II, defense counsel cross-examined plaintiff in an effort to obtain a breakdown of the individual elements necessary to prove up a claim for attorney fees. (*Tippet v. Tippet* (1978), 65 Ill. App. 3d 1018,

---

[3]We find plaintiff's argument that the issue of proof cannot be raised because the record is incomplete irrelevant to the due process issue upon which our determination is made. However, such an argument highlights the legal repercussions of an incomplete transcript, and, in so doing, also highlights the inequity of proceeding without a court reporter when one was specifically ordered.

1021, 383 N.E.2d 13.) At this point the following colloquy ensued:

"MR. KRAMER: Why don't you prove up the elements of time and hours worked.

THE COURT: You have to do it in a case of this sort for Attorney's Fees, that is clearly the criteria and you haven't done that, yet and that is for me to decide. I am not interested in wasting a lot of time as far as going through each and every one of these things. This is a high volume court, we are going to dispose of this case before noon, I guarantee you."

Not only was there an arbitrary time limit put on the proceeding, but it appears that the trial court was erroneously transferring the burden of proving the elements of an action for attorney fees to defendant.

Thereafter, during further cross-examination of plaintiff regarding his disbursal of payments made by Parkway,[4] the court stated:

"THE COURT: You have forty-five minutes to go into what he did or didn't, involving Parkway.

MR. KRAMER: That is what I am doing.

THE COURT: You now raise that for the first time.

MR. KRAMER: Every time I showed him a payment.

THE COURT: You tried, you haven't been very successful.

MR. KRAMER: If he would be more responsive.

THE COURT: It is not a problem of him being responsive, get to the point, I would like to hear it. Now what it is [sic], if you don't stop wasting my time and everybody else's time."

Lastly, after an exchange between the court and the witness regarding frequency of billing to Parkway and subsequent payments received, the court stated:

"All right. I am certainly not going to play ring-around-the-rosie all day, you may want to do that but it is not going to be with me sitting here. I heard enough and I am going to make a judgment in favor of the Plaintiff and against the Defendant for six thousand nine hundred and nineteen dollars and eighty-eight cents. I have to be reasonable under the circumstances."

When defense counsel objected, stating that the case was not concluded regarding his defense, the following colloquy ensued:

"THE COURT: The case is over, I said it was over.

---

[4]Incredibly, Nye's testimony revealed that payments sent from Kramer to be applied to Parkway's account were indiscriminately applied in whole or in part by Nye to Kramer's personal account. Thus, clarification of this apparent misapplication of payments was imperative to a resolution of the matter before the court.

MR. KRAMER: Without giving us an opportunity to present anything?

THE COURT: I gave you an opportunity to present something.

MR. KRAMER: It is still his Case in Chief.

THE COURT: This is a high volume Court, Counsel, we don't have time, we can't spend three days going over. You should have tried it in some other Court than a High Volume Court, you should have made a request for that. We have ninety, a hundred, a hundred and twenty cases a day, we can't spend two days or even as much as two hours on any one case, that is as much time as there is available.

MR. KRAMER: I understand.

THE COURT: There is no reason, I am from downstate and I come up here on assignment and I hear these cases and we have got to get them out. I gave you every opportunity to make your point but to go around and around and around in circles, I heard enough, I feel I made the proper decision and Justice has been done ***.

\* \* \*

MR. KRAMER: Your Honor is not permitting the Defendant to put on any defense?

THE COURT: I have already entered Judgment. Take whatever steps you want to."

■ Based on the aforementioned, the conclusion is inescapable that the trial court heard no evidence from defendant as to the reasonable value of services rendered to Parkway, but rather accepted plaintiff's own estimate of the value of his services, an estimate that, by plaintiff's own admission, was inaccurate in its original form, and, in our opinion, was insufficiently documented in its amended form. Case law is unequivocal that a judgment for unliquidated damages cannot be entered without establishing the fair amount of these damages. (*Stickler v. McCarthy* (1965), 64 Ill. App. 2d 1, 23, 212 N.E.2d 723.) Without question, this was not done in the case at bar.

■ It is our opinion that defendant was deprived of the protection of his day in court when he was not given the opportunity to be heard in his defense, a basic principle provided for by our constitutional mandates and consistent with the fundamental concept of an equitable judicial system. (*Clements v. Schless Construction Co.* (1967), 91 Ill. App. 2d 19, 23, 234 N.E.2d 578.) This determination that the proceedings below were a denial of procedural due process obviates the need to consider the other substantive matters raised by

the parties. Accordingly, the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

LORENZ and MEJDA, JJ., concur.