ROBERT L. AARON *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. HERB HENDRICKSON, d/b/a Hendrickson Lumber Company, Defendant-Appellant and Cross-Appellee.

Fifth District   No. 5—90—0244

Opinion filed December 6, 1991.

844

Richard Kruger, of Kruger & Henry, of Metropolis, for appellant.

William Rudert, of Mike McCormick & Associates, of Vienna, for appellees.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, Robert L. Aaron and Mary Sue Aaron, brought suit against defendant, Herb Hendrickson, d/b/a Hendrickson Lumber Company, to recover damages caused by defendant's wrongful cutting of plaintiffs' trees. After a bench trial, the trial court entered judgment for plaintiffs for $17,056.81 plus costs of $2,165.88 against defendant. Defendant appeals the judgment of the circuit court of Johnson County and asks us to consider the following issues: (1) whether section 4 of the Wrongful Tree Cutting Act (the Act) (Ill. Rev. Stat. 1987, ch. 96½, par. 9404) is unconstitutional, or (2) if section 4 of the Act is not unconstitutional, whether the trial court's findings were against the manifest weight of the evidence. Plaintiffs have filed a cross-appeal raising a single issue, namely, whether the trial court's finding that plaintiffs failed to prove ownership within an area referred to as the "overlap" was against the manifest weight of the evidence. We affirm.

The evidence presented in this case shows that defendant purchased approximately 125 acres of timber from Lyle Carlton in September 1987. The Carlton land on which the timber is located adjoins land owned by plaintiffs. Defendant paid Carlton $7,500 and a 1984 Honda four-wheeler for Carlton's 125 acres of timber. Carlton told defendant that the boundary line between his property and plaintiffs' property was a power line running through the area. Carlton's basic instruction to defendant was that defendant could cut any trees east of the power line. Defendant did not look at the legal description of defendant's contract for deed, but he did look at an aerial photograph in the ASCS office and an abstract office plat book. The power line ran north and south, parallel with the section lines. A reading of Carlton's legal description shows the boundary line is actually a diagonal line which does not go as far as the power line. A land surveyor, Rod Martin, was hired by plaintiffs' counsel to establish plaintiffs' property line.

According to Martin's survey, there is a 1.14-acre overlap between plaintiffs' property and the description of the Carlton property line in defendant's contract for deed. The following diagram is adopted from plaintiffs' exhibit number 1 and shows the location of plaintiffs' property line, Carlton's property line, the power line, and the overlap area:

Defendant hired Max Crippen and Bill Mellein to cut the trees for him. Defendant paid the men by the Doyle Scale on each 1,000 board feet they cut at a rate of $15 per 1,000 feet. Defendant showed Crippen and Mellein what he believed the boundary line to be, which was anything east of the power line, and gave them an aerial photograph to assist in determining the property line. Defendant stated that he also talked to an adjoining landowner, Mr. Walker, who verified that the boundary line was the power line. Lyle Carlton also showed Crippen and Mellein the boundary lines as he understood them.

The value of the timber cut was a source of dispute between the parties. Upon plaintiffs' motion, the trial court pursuant to section 3

of the Act ordered reports by three independent-value appraisers from the Department of Conservation (the Department). Each of the appraisers divided his report into two areas: (1) the value of the trees cut in the area determined to be plaintiffs', and (2) the value of the trees cut in the overlap area. The following table is useful in comparing the three appraisals:

|  | Value of timber cut in "overlap area" | Value of timber cut from plaintiffs' property |
|---|---|---|
| Jack N. Kagy | $549.42 | $4,765.66 |
| Robert Mayberry | $635.05 | $4,698.81 |
| Don E. Van Ormer | $998.32 | $7,592.44 |

Kagy charged $480 for his appraisal services, Mayberry charged $296.40, and Van Ormer charged $288.48. Kagy and Mayberry used basically the same method to determine the value of the trees. Both attempted to match the tops of the trees that were cut to the remaining stump. They then measured the distance between the top and the stump to determine the length of the log. Both used the Doyle Scale to determine board feet. The value for each variety of tree was multiplied by the total board feet for that variety in order to determine the fair market value. Van Ormer used the standard tree-volume table measurement to determine volume. To do this, he determined diameter at 4½ feet off the ground. Van Ormer then determined the useful portion in logs and in half-logs.

Plaintiffs did their own estimate of the value of their loss. Plaintiff Robert L. Aaron estimated that 218 trees had been wrongfully cut on his property. He used the Doyle Log Scale to arrive at the volume of logs cut and determined their value to be $5,243.71. Defendant also calculated the loss plaintiffs suffered due to the cutting of plaintiffs' trees. Defendant estimated the value of all the trees at $70 per board feet. Using the Kagy and Mayberry determinations of total board feet and applying a rate of $70 per 1,000 board feet, defendant determined that plaintiffs lost $2,950 worth of trees. Defendant testified that he measured board feet using the same method as Kagy and Mayberry. Defendant did not approve of the method used by Van Ormer to determine value.

After hearing the evidence, the trial court found for plaintiffs on count I in the amount of $5,685.63 plus costs, but found that plaintiffs had failed to prove ownership within the area identified as the overlap. The trial court also found for plaintiffs on count II and invoked the treble-damage provision found in section 2 of the Act (Ill. Rev.

Stat. 1987, ch. 96½, par. 9402) for a total award of $17,056.81 plus costs. The costs found by the court and assessed to defendant include half of the $1,200 survey fee of plaintiffs' surveyor, half of the $472 charged by plaintiffs' surveyor to testify, $1,064.88 for the costs of the three appraisals ordered by the trial court and $265 for filing and service of process fees and subpoena fees for witnesses. Even before trial, defendant raised the issue of constitutionality. Defendant filed a motion attacking the constitutionality of the Act, which was denied by the trial court on the first day of trial.

The challenged statutes provide in pertinent part:

"§2. Any party found to have intentionally cut or knowingly caused to be cut any timber or tree which he did not have the full legal right to cut or caused [sic] to be cut shall pay the owner of the timber or tree 3 times its stumpage value.

§3. The courts of this State may order the Director or his representative to secure three independent value appraisals to determine the stumpage value of wrongfully cut timber or trees. Such order shall state the reason the value information is needed, the parties involved in the action, the area to be examined and other information needed by the Department to carry out its responsibilities. All parties to the court action shall be instructed to make themselves available to the Department at reasonable times to assist in the location of areas and material to be examined. Expenses incurred, including but not limited to those for surveys, consulting services and administrative costs, shall be borne equally by the parties unless otherwise ordered by the court.

§4. Within 30 days after the Department is ordered to establish value, it shall notify the court of its findings of value and expenses. The court shall then average the appraisals and award triple the average value and make final determination as to which party or parties shall pay expenses. The failure of any party to make full payment within the time limits set by the court or to cooperate with the Department shall be considered contempt of court." Ill. Rev. Stat. 1987, ch. 96½, pars. 9402, 9403, 9404.

■ The first issue we are asked to consider is whether section 4 of the Act is unconstitutional. Defendant first contends that section 4 is unconstitutional because it violates article II, section 1, of the Illinois Constitution (Ill. Const. 1970, art. II, §1), the separation of powers clause, as an action of the General Assembly interfering with the exercise by the courts of their judicial power. According to

defendant, section 4 dictates that a court must assess damages in a specific way, namely, to average three appraisals and award three times the average value, without allowing the court any discretion in its determination. Plaintiffs reply that the statute in question does not prescribe a rule of procedure, which would infringe upon a judicial power in violation of article II, section 1, of the Illinois Constitution, but rather creates a cause of action for an owner of wrongfully cut trees and proposes a way to ascertain damages which a court may or may not follow. We agree.

In *People v. Davis* (1982), 93 Ill. 2d 155, 442 N.E.2d 855, our supreme court stated:

> "Article II, section 1, of the Illinois Constitution of 1970 provides: 'The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another.' The General Assembly has the power to enact laws governing judicial practice only where they do not unduly infringe upon the inherent powers of the judiciary. (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 59[, 389 N.E.2d 1170, 1172]; *People v. Callopy* (1934), 358 Ill. 11[, 192 N.E. 634].) Furthermore, it is the undisputed duty of the court to protect its judicial powers from encroachment by legislative enactments, and thus preserve an independent judicial department. *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149[, 105 N.E.2d 713].
>
> A statute should be interpreted so as to avoid a construction which would raise doubts as to its validity. (*Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 363[, 399 N.E.2d 1295].) It is our duty to construe acts of the legislature so as to affirm their constitutionality and validity, if it can be reasonably done, and further if their construction is doubtful, the doubt will be decided in favor of the validity of the law challenged. *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Com.* (1969), 42 Ill. 2d 385, 389[, 251 N.E.2d 253]; *Illinois Crime Investigating Com. v. Buccieri* (1967), 36 Ill. 2d 556, 561[, 224 N.E.2d 236]." 93 Ill. 2d at 161-62, 442 N.E.2d at 857-58.

See also *People v. Flores* (1984), 104 Ill. 2d 40, 46-47, 470 N.E.2d 307, 309.

The *Davis* court held that two sections of a statute, which provided that "[t]he sentencing judge in each felony conviction shall set forth his reasons for imposing the particular sentence he enter[ed] in the case" (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(b)) and "[i]n imposing a sentence for a felony, the trial judge shall specify on the rec-

ord the particular evidence, information, factors in mitigation and aggravation or other reasons that led to his sentencing determination" (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c)), were not unconstitutional because they were not mandatory. The *Davis* court interpreted the word "shall" as permissive rather than mandatory. *Davis*, 93 Ill. 2d at 162, 442 N.E.2d at 858.

In the instant case, we must look at the Act as a whole. The statute in question does not dictate what method is to be used to determine the value of the impermissibly cut trees. Section 3 of the Act states that "[t]he courts of this State *may* order the Director or his representative to secure three independent value appraisals." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 96½, par. 9403.) The word "may" is permissive; section 3 of the Act makes available to a court a procedure for determining value, but the Act in no way limits a court to this one method of value determination. If a trial court determines that another method would be more appropriate in determining value, the court is free to use that method.

Defendant also argues that the judicial function has been encroached upon by the General Assembly's directive to "average the appraisals and award triple the average value." (Ill. Rev. Stat. 1987, ch. 96½, par. 9404.) We disagree and find that the General Assembly has not usurped the judicial function.

We conclude that the Act gives a tree owner an additional remedy to trespass, and being punitive in nature, the treble-damage provision discourages persons from cutting down others' trees without thoroughly checking out boundary lines and true ownership of the timber. The award of treble damages is not uncommon. For example, treble-damage provisions are a mainstay of Federal antitrust laws. (See section 1964(c) of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §1964(c) (1988), and section 15 of the Clayton Act, 15 U.S.C. §15 (1988).) In the instant situation, the treble-damage provision seeks to protect tree owners from those who might knowingly or unknowingly cut their trees. A strong presumption of constitutionality attaches to any legislative enactment, and the burden rests on the challenger to demonstrate its invalidity. (*People v. Joseph* (1986), 113 Ill. 2d 36, 495 N.E.2d 501.) Since the averaging of the three appraisals is set forth only as one method which the trial court may use in determining stumpage value, we find no violation of the separation of powers clause of the Illinois Constitution.

Defendant next contends that section 4 of the Act is unconstitutional because it violates the due process clause of the Illinois Constitution. (Ill. Const. 1970, art. I, §2.) Defendant contends that section

4 of the Act does not give defendant an opportunity to present its own witnesses who would testify to stumpage value, fails to give an opportunity to cross-examine the independent appraisers, and ultimately fails to give defendant the opportunity to present a meaningful defense. We disagree.

Procedural due process requires that a person be given both notice and opportunity to be heard and defend in an orderly proceeding adapted to the case. (*Lakeview Trust & Savings Bank v. Estrada* (1985), 134 Ill. App. 3d 792, 808, 480 N.E.2d 1312, 1324; *Nye v. Parkway Bank & Trust Co.* (1983), 114 Ill. App. 3d 272, 274, 448 N.E.2d 918, 919.) " 'Due process of law is served where there is a right to present evidence and argument in one's own behalf, the right to cross-examine adverse witnesses, and impartiality in rulings upon the evidence which is offered.' " *Lakeview Trust*, 134 Ill. App. 3d at 808, 480 N.E.2d at 1324, quoting *Piotrowski v. State Police Merit Board* (1980), 85 Ill. App. 3d 369, 373, 406 N.E.2d 863, 866.

We believe that the procedural protections given to defendant in the instant case meet the above requirements. Again, we note that the use of three independent appraisals is one possibility open to the court; it is not mandatory that value be determined by using this method. Moreover, in the instant case, defendant was given the opportunity to cross-examine all three appraisers, and did so. Defendant was also given the opportunity to present his own evidence concerning the value of plaintiffs' cut trees. We cannot say that the trial court erred in refusing to consider defendant's own appraisal of plaintiffs' trees, given a $1,700 difference between his estimate and the lowest appraisal by one of the three independent appraisers from the Department. Defendant was entitled to present any evidence or any witnesses he felt would bolster his defense, including impeachment of the appraisers. After reviewing the record as a whole, we find no violation of defendant's due process rights.

Defendant argues that the present case is analogous to *Nye v. Parkway Bank & Trust Co.* (1983), 114 Ill. App. 3d 272, 448 N.E.2d 918. In *Nye*, the plaintiff brought suit to recover attorney fees due him after his alleged representation of defendant in a lawsuit. The defendant denied owing the plaintiff for any services. At trial, the plaintiff himself was the first witness. After cross-examination of the plaintiff, but before the plaintiff had rested and before the defendant had the opportunity to present his defense, the trial court entered judgment for the plaintiff. In *Nye*, there was a violation of procedural due process, which is absent from the instant case. Here, both plaintiff and defendant presented the witnesses and testimony they had

prepared. Defendant was given the opportunity to cross-examine all of plaintiffs' witnesses and defendant testified on his own behalf. On this basis, *Nye* is distinguishable from the case at bar.

Defendant also contends that he was denied procedural due process rights in that he was denied the right to confront and cross-examine the three value appraisers since there is nothing in the Act which requires the appraisers' presence in court. While the Act does not specify that the appraisers' presence is required in court, all three of the independent appraisers in the instant case were present in court and defendant cross-examined each one individually.

■ Defendant's next contention is that his right to due process was denied because the Act's formula for averaging damages is intrinsically unfair. According to defendant, the Act seeks to average the appraisals, but falls short because one of the three appraisals may not be in the same basic range as the other two. Defendant contends that the appraisals must be close in value for the averaging system to work, stating that "the whole idea of averaging something is to cut out the extreme values, and find the normal or standard value in a series of values." A strong presumption of constitutionality attaches to any legislative enactment, and the burden rests on the challenger to demonstrate its invalidity. (*People v. Joseph* (1986), 113 Ill. 2d 36, 495 N.E.2d 501.) In the present situation, the trial court is to find an "average" value of the unlawfully cut trees and triple that amount in order to punish defendant and deter future offenders. We believe the instant formula accomplished what the General Assembly set out to do in enacting the statute and that the process is not intrinsically unfair.

■ Defendant's final constitutional contention is that section 4 of the Act is unconstitutional because it delegates judicial authority to tree-value appraisers. Specifically, defendant argues that the Act allows tree-value appraisers to determine damages and, thus, invades the court's power to hear evidence, evaluate cases, and determine damages and is in violation of both article II and article VI, section 1, of the Illinois Constitution of 1970.

Defendant cites *DeLuna v. St. Elizabeth's Hospital* (1989), 184 Ill. App. 3d 802, 540 N.E.2d 847, in support of his contention. In *DeLuna*, our colleagues in the first district found that section 2—622(a)(1) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—622(a)(1)), which required that medical malpractice complaints be accompanied by an affidavit of a health care professional in whose "determination" there was a "reasonable and meritorious cause" for filing an action and a written report by the health professional indica-

ting the basis for his determination, unconstitutionally delegated judicial authority to health professionals and invaded the power of courts to hear and determine cases in violation of article II, section 1, and article VI, section 1, of the Illinois Constitution. The *DeLuna* court stated:

"We agree with plaintiff that in section 2—622, the legislature unconstitutionally delegates to a professional group the function of deciding whether a plaintiff's claim should proceed to a hearing, for it is the role of the court, applying the law concerning the sufficiency of allegations in a complaint, to determine whether there is any set of facts under which the plaintiff may state a cause of action in a particular case and move on in the judicial process. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615; *Theodosakis v. Austin Bank* (1981), 93 Ill. App. 3d 634, 417 N.E.2d 806.) Yet, under section 2—622, the court cannot reach the issue of whether or not a plaintiff has adequately stated a cause of action unless he or she has filed the required affidavit and the report of a health professional. Indeed, here, under section 2—622, the court was not allowed to consider important and perhaps even decisive admissions of fact in the defendant's discharge summary for plaintiff's decedent as demonstrating reasonable cause for filing the lawsuit, or to determine whether the complaint states cause of action in any of its various counts. Consequently, the court's authority to exercise its inherent power to hear and determine a cause was effectively barred, because section 2—622 delegates that function to health professionals, and in determining whether an action may be maintained, the court's role is confined initially to the purely formal and nominal one of finding whether the attorney's affidavit and the required reports of health professionals have been filed, and it is mandated to dismiss the case if they are lacking. It is one thing to require a medical malpractice plaintiff to provide expert opinion testimony at trial supporting his claim, yet quite another to give control over the ability of our courts to hear and decide medical malpractice cases to those experts. And it is one thing to be required to obtain leave of court in order to advance in the judicial process; yet it is quite another to exact a litigant to obtain the leave of lay persons in order to pursue his suit at law." 184 Ill. App. 3d at 806-07, 540 N.E.2d at 850-51.

We find that the instant situation dealing with tree-value appraisers is different from the situation presented by section 2—622 of the

Illinois Code of Civil Procedure. Here, the statute in question does not delegate to anyone the duty of determining whether a plaintiff's claim for wrongfully cut trees has merit. Rather, the statute in question allows a cause of action for wrongfully cut trees in addition to the traditional cause of action of trespass. The court's authority to hear and determine this additional cause is not impaired by the statute. The court is given the option of ordering three independent appraisers to assist the court in determining damages. For the reasons indicated, we find that section 4 of the Act is not unconstitutional. Given this result, we need not address defendant's contention that section 4 is not severable from the rest of the Act, thereby making the entire Act unconstitutional.

The other issue defendant asks us to address is whether the trial court's findings were against the manifest weight of the evidence. Defendant contends that the trial court's determinations were wrong because plaintiffs failed to meet their burdens of proof on essential elements of the case. In this respect, defendant first argues that section 2 of the Act does not impose strict liability, and that because neither defendant nor Crippen or Mellein knew he was cutting plaintiffs' trees but made a mistake as to ownership, defendant cannot be held liable under the Act. Plaintiffs respond that the Act in question does not require proof of guilty knowledge; it is enough that defendant was mistaken in his belief that he owned the trees. We agree with plaintiffs that the Act is meant to discourage not only the malevolent timbermen but also the errant timbermen.

In the past, when a situation similar to the instant case was presented to a court, the proper measure of damages was for property in its severed condition and not for the difference in the value of the land before and after a defendant's misconduct. (*Jones v. Sanitary District* (1911), 252 Ill. 591, 601-02, 97 N.E. 210, 214-15; *First National Bank v. Amco Engineering Co.* (1975), 32 Ill. App. 3d 451, 335 N.E.2d 591.) The inequity of this rule was pointed out by the *First National Bank* court when it stated:

> "Where the property injured, although part of the realty, has a value which can be accurately determined without reference to the freehold, the recovery may be for the property in its severed condition and not for the difference in the value of the land before and after the defendant's misconduct. [Citations.]
>
> Other jurisdictions, in dispensing justice between the parties, allow the reasonable cost of replacing the trees or for the reasonable cost of restoring the property to approximate, as near as possible, its original condition. (See Annot., 69

A.L.R.2d 1335, §§15-16 (1969).) This, it would seem, is the more equitable rule, but Illinois law has not, to date, recognized such rule." (32 Ill. App. 3d at 454, 335 N.E.2d at 593.)

The General Assembly apparently recognized the inequity of the rule as it previously existed and, in an attempt to correct the situation, allowed for a separate cause of action in addition to trespass. The question arises as to what the General Assembly intended by the words "intentionally and knowingly" under section 2 of the Act.

■■ Section 2 of the Act imposes liability upon anyone found to "have intentionally cut or knowingly caused to be cut any timber or trees which he did not have the full legal right to cut or caused [sic] to be cut." (Ill. Rev. Stat. 1987, ch. 96½, par. 9402.) A fundamental rule of statutory interpretation is to ascertain the intent of the General Assembly and give it effect. Legislative intent is primarily determined through consideration of the statutory language. (*Illinois Department of Revenue v. Country Gardens, Inc.* (1986), 145 Ill. App. 3d 49, 495 N.E.2d 161.) The words "intentionally and knowingly" are not defined within the statute. Here, we believe the record supports the finding that defendant "intentionally" or "knowingly" cut plaintiffs' timber. We agree that defendant most likely did not desire the end result, that of cutting plaintiffs' timber. However, due to the inequity of the previous rule that allowed a plaintiff to recover only the value of the cut wood, it is apparent that the General Assembly was attempting to correct the inequity of the prior law. It is rational that the burden of establishing boundaries be placed on a defendant who orders wood to be cut. Otherwise, as plaintiffs point out, it would be advantageous for a defendant to cut now and worry later about tree boundary lines since the maximum financial burden he would face would be the stumpage value of the severed trees. We find that the reasonable interpretation of the Act is that an innocent owner of wrongfully cut timber can recover even without proving malicious and wilful misconduct on the part of a defendant.

■■ Defendant next argues that the tree cutters hired by defendant, Crippen and Mellein, were independent contractors, not employees of defendant, and as such, no liability on the part of defendant exists for wrongfully cutting plaintiffs' trees. We disagree.

The statute imposes liability not only on those who cut timber, but also on those who "knowingly cause" timber to be cut. (Ill. Rev. Stat. 1987, ch. 96½, par. 9402.) The intent of the statute is clear. The Act imposes liability directly on a defendant without any insulation due to principles of agency. Here, defendant hired Crippen and Mellein to cut

the trees and, in doing so, pointed out boundary lines which were incorrect.

Defendant cites *Cushing v. Dill* (1840), 3 Ill. (2 Scam.) 460, to support his contention that the Act only imposes liability on the actual trespassers such as Crippen and Mellein. The *Cushing* case involved a statute which provided penalties against those who knowingly cut timber without the owner's permission. Because the defendant in *Cushing* directed his employees to cut timber only on the defendant's land and cautioned the employees from cutting timber on another person's land, the *Cushing* court refused to impose liability against the employer. We find the *Cushing* case distinguishable from the instant case. First, the statute here in question imposes clear liability on defendant because it was defendant who caused the timber to be cut through his directions to Crippen and Mellein. Second, and contrary to *Cushing*, defendant herein did show Crippen and Mellein the boundary lines and told them they should cut any timber east of the power line. It was defendant's misguided directions which caused plaintiffs' timber to be cut, whereas in *Cushing*, the defendant did not show his employees the boundary lines and cautioned them against cutting timber on another's land. Therefore, we find *Cushing* to be distinguishable.

■ The next contention made by defendant is that because the judge averaged the three appraisals in order to arrive at a damage award on count I, the award is similar to a quotient verdict and must be declared void.

A trial judge has wide latitude in affixing damages. (*Harry Alter Co. v. Chrysler Corp.* (7th Cir. 1961), 285 F.2d 903, 907.) Here, the trial court averaged the appraisals of the three independent value appraisers from the Department. The trial court apparently used this method of value determination based on count II of plaintiffs' complaint which was brought under the Act. (Ill. Rev. Stat. 1987, ch. 96½, par. 9401 *et seq.*) The trial court determined that the three independent appraisals would be a proper method to determine value of the wrongfully cut trees. Defendant had the opportunity to cross-examine the appraisals and the opportunity to present its own evidence as to the value of the wrongfully cut timber. We find that the trial court did not abuse its discretion in averaging the three independent appraisals in order to establish damages.

■ The final issue raised by defendant is that the trial court improperly assessed $1,900.88 in costs against defendant. Defendant specifically complains of the following costs assessed against defendant: (1) the survey charges of plaintiffs' surveyor, (2) the fee charged

by plaintiffs' surveyor for appearing as a witness, and (3) the fees charged in preparing appraisals by the appraisers selected by the Department. Plaintiffs respond that the $1,900.88 of which defendant complains were costs properly assessed according to the statute. We agree.

At common law, a successful litigant was not entitled to recover costs. The recovery of costs is allowed only by statute and such statutes must be strictly construed because they are in derogation of the common law. (*In re W.W.* (1983), 97 Ill. 2d 53, 55, 454 N.E.2d 207, 209.) The Act in question allows for assessment of costs. Section 3 of the Act provides, in pertinent part:

> "Expenses incurred, including but not limited to those for surveys, consulting services and administrative costs, shall be borne equally by the parties unless otherwise ordered by the court." (Ill. Rev. Stat. 1987, ch. 96½, par. 9403.)

Section 4 of the Act also addresses the issue of costs. It directs the court in making a final determination as to value and expenses to "average the appraisals and award triple the average value and make final determination as to which party or parties shall pay expenses." Ill. Rev. Stat. 1987, ch. 96½, par. 9404.

In the instant case, the trial court assessed the following damages against defendant: half of the $1,200 survey fee charged by plaintiffs' surveyor, half of $472 charged by plaintiffs' surveyor to testify in court, and the full total of $1,064.88 charged by the three independent appraisers for a total of $1,900.88. The statute specifically states that defendant could be charged half the survey fees. We also believe the language of the statute allowed the trial court to tax as costs, in its discretion, half of the surveyor's fee for his testimony in court, and the full costs charged by the three appraisers from the Department. Costs are allowances in the nature of incidental damages awarded to reimburse the prevailing party for the expenses necessarily incurred in his assertion of his rights in court. (*Galowich v. Beech Aircraft Corp.* (1982), 92 Ill. 2d 157, 165-66, 441 N.E.2d 318, 321-22.) We believe the costs charged to defendant in this case were costs incurred as a result of going to court and not the ordinary expenses of litigation, which are not allowed. (92 Ill. 2d at 166, 441 N.E.2d at 322.) We find no abuse of discretion by the trial court in ordering defendant to pay $1,900.88 in costs of which defendant now complains.

Plaintiffs have filed a cross-appeal in the instant case arguing that the trial court's findings that plaintiffs failed to prove ownership of the area within the overlap was against the manifest weight of the evidence. Plaintiffs contend their introduction of deeds and plaintiffs'

chain of title created a presumption of ownership in plaintiffs' favor which defendant failed to rebut. Defendant responds that the testimony in this case also showed that Lyle Carlton was the owner of the overlap and, therefore, the trial court did not err in finding that plaintiffs failed to prove ownership of the overlap area. We agree with defendant.

■ The introduction of deeds into evidence by a plaintiff is sufficient evidence of title to sustain an action for injury to the land, *in the absence of any showing that the title is in anyone else. (Jent v. Old Ben Coal Corp.* (1920), 222 Ill. App. 380, 383, citing *City of Chicago v. McGraw* (1874), 75 Ill. 566.) In the present situation, the trial court was made aware of the discrepancies between plaintiffs' title and Lyle Carlton's title. Plaintiffs' own exhibit number 1, which we have reproduced in our statement of facts, clearly depicts a 1.14-acre overlap area. Plaintiffs' own surveyor drew the overlap area to the court's attention. Carlton's title was used by plaintiffs' surveyor in establishing the 1.14-acre overlap and in developing plaintiffs' exhibit number 1. The evidence was replete with representations that the 1.14-acre overlap existed. Therefore, there was other evidence beyond the introduction of plaintiffs' deeds to show that another, namely Lyle Carlton, owned the property which has been referred to as the overlap. We agree with the trial court that plaintiffs failed to prove that they own the area in the overlap. We find the trial court was correct in not awarding damages for timber cut in the 1.14-acre overlap.

For the foregoing reasons, the judgment of the circuit court of Johnson County is affirmed.

Affirmed.

HARRISON and LEWIS, JJ., concur.