DANIEL E. MARSELLA *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. DAVID SHAFFER *et al.*, Defendants-Appellees and Cross-Appellants.

Second District   No. 2—00—0912

Opinion filed August 1, 2001.—Rehearing denied August 28, 2001.

Margaret M. Borcia, of Morrison & Morrison, P.C., of Waukegan, for appellants.

James J. Graney, of James J. Graney & Associates, of Rolling Meadows, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs, Daniel E. and Sheryl Marsella, appeal a jury's award of damages under the Wrongful Tree Cutting Act (Act) (740 ILCS 185/0.01 *et seq.* (West 1996)) for trees wrongfully cut by defendants, David and Kim Shaffer. Defendants cross-appeal the award of both treble damages under the Act and common law punitive damages for the same injury. We affirm in part, reverse in part, and remand the cause with instructions.

Plaintiffs' third amended complaint contained 10 counts: count I alleged negligent property damage to plaintiffs' trees, lawn furniture, pool, and deck; count II sought punitive damages, alleging intentional property damage to plaintiffs' trees; count III alleged assault; count IV alleged trespass and sought actual and punitive damages; count V alleged violation of a county ordinance prohibiting open burning; count

VI alleged violation of a village ordinance prohibiting the destruction of trees and shrubs; count VII alleged nuisance for burning of trees and sought an injunction and actual damages; count VIII alleged intentional nuisance and sought an injunction and actual and punitive damages; count IX alleged violations of the Wrongful Tree Cutting Act; and count X alleged violation of a zoning ordinance and sought an order enjoining defendants from building a home on their property. Before trial, the court ruled in defendants' favor on the last count. The case went to trial on the remaining nine counts on June 8, 1999.

It was undisputed that defendants owned the property adjacent to plaintiffs' property. In September 1996 defendant David Shaffer began to clear the trees on his property for construction of a house. David used a tractor, known as a Bobcat, and chainsaws and then burned the logs and tree limbs to avoid the cost of disposal.

In the course of clearing trees from his own property on September 22, 1996, David Shaffer crossed onto plaintiffs' property and property owned by the Village of Fox River Grove (Village) and removed some of the trees and bushes. The area affected on plaintiffs' property was part of a conservation easement held by the Village.

Before trial, the court granted plaintiffs' motion *in limine* in part, barring portions of the testimony of defendants' tree expert, George Ware, and the complete testimony of Charles Stewart, defendants' witness, hired by the Village of Fox River Grove to evaluate the damage to the trees on the Village property.

David Shaffer testified that, in response to plaintiff Sheryl Marsella's complaints about the fire on defendants' property in September 1996, David walked onto plaintiffs' property and saw ashes but no damage to the property. David offered to clean the ashes from plaintiffs' property. But, over the next several days, David received a barrage of phone calls from governmental agencies in response to plaintiffs' complaints. Defendants had numerous campfires on their property in September 1996 that resulted in numerous arguments between David and Sheryl. On September 19, 1996, during one of these arguments, Sheryl told David that "she was going to make our lives miserable." David Shaffer was later arrested for disorderly conduct due to this altercation.

David Shaffer testified that later when he was clearing trees from his own property with a Bobcat, he inadvertently misjudged the lot line, damaging trees and bushes on plaintiffs' property. The affected area consisted of heavy thicket, or underbrush, and a few smaller trees.

Lawrence R. Hall, an expert arborist, testified on plaintiffs' behalf. Hall stated that, when he inspected the affected area on November 8,

1996, he saw a pile of tree branches, old trees, and parts of trees. The pile was approximately 6 to 8 feet high and 30 by 20 feet wide. Hall could not tell which trees came from plaintiffs' property and which came from defendants'. Hall also could not tell how many trees had been uprooted from plaintiffs' property. Therefore, by examining an adjacent area of the same size as the area in question, Hall estimated the number, species, and condition of the damaged trees plus or minus 10%. Hall estimated that the affected area was approximately 2,500 square feet. The adjacent area had 31 trees, including box elder, black cherry, American elm, mulberry, and buckthorn trees. Hall stated that these trees were of low quality. Using the trunk formula method, an accepted valuation method by the International Society of Arboriculture, Hall valued these trees at $15,448. The trunk formula method considers tree size, market value, location, and species to determine the value of a tree.

During cross-examination, Hall stated that the cost of replacing the trees would be $8,350, representing the cost of planting 33 trees (smaller trees would be placed where the original 31 trees stood) six to eight feet tall costing $200 each for a cost of $6,600 with an additional $1,750 for removal of debris and repair work on the existing trees. Hall stated that the cost-of-replacement method was not appropriate for this situation because replacing the damaged trees would damage the remaining trees due to their extensive root systems. The replacement trees could not be the same size and species as the trees that were removed. Rather, the trees would be replaced by smaller, higher quality trees. However, replacing the trees would not bring the area back to its previous state.

George Ware, an expert tree scientist, researcher, and consultant, testified on defendants' behalf. Ware stated that when he inspected the affected area on the parties' property on May 23, 1998, the area was being cleared. He observed a pile of dead "junk trees" of the buckthorn, black cherry, mulberry, and box elder species. Only one tree had a diameter of 8 to 10 inches; the others were smaller at 4 inches in diameter. Ware could not tell which trees came from plaintiffs' property.

Ware disagreed with Hall's analysis in many respects. Ware believed that the affected area was 1,250 square feet, half as large as Hall's estimated size. The adjacent area Hall used to compare to the affected area was not comparable and the affected area could not have contained more than 15 or 16 trees, about half the 31 trees estimated by Hall in his report. Ware stated that aerial photos taken before and after plaintiffs' trees were damaged did not support Hall's estimation.

Ware also disagreed with the method of valuation used by Hall,

stating the trunk formula method used by Hall was inappropriate because it cannot be used to measure the value of trees in a woodland area. Ware had no opinion of the actual value of the destroyed trees, but Ware opined that Hall placed too high a value on them. The affected area was in the rear corner of plaintiffs' property and could not be seen from plaintiffs' home.

Ware stated that the more appropriate method for valuing the affected trees was the cost-of-replacement method. Ware agreed that the affected trees would be replaced by higher quality trees, but he estimated the number to be only 12 to 15, or about half the number of replacement trees Hall recommended.

Kurt Ulrich, superintendent of building and zoning for the Village of Fox River Grove, testified that, before the trees were cut, the affected area was part of a conservation easement held by the Village, consisting of trees and brush in their natural state. The affected area was relatively dense with small diameter growth of three or four inches in diameter or less. The trees and brush thinned as they approached plaintiffs' property.

The trial court admitted into evidence videotapes of the pile of dead trees, the clearing of the pile, and the before and after scenes of the clearing away of the pile of trees. The trial court also admitted aerial photos of the affected area taken before and after the trees were cut.

Over plaintiffs' objection, the trial court modified plaintiffs' jury instructions regarding the measure of damages for the cut trees, informing the jury that plaintiffs were entitled to "three times" the " 'stumpage' value as determined by the jury" and instructing the jury on the verdict form to determine "three times the standing value of the trees cut down on plaintiffs' property." Plaintiffs' version of the instruction and verdict form contained information regarding the tripling of damages.

During closing arguments, counsel for the defense made numerous remarks regarding the tripling of damages. Plaintiffs' objections to these remarks were overruled by the trial court.

The jury returned the following verdict. The jury awarded $10,500, as three times the standing value of the trees, under the Act, $500 and $250 for damages to the deck and the lawn furniture, respectively, and $5,000 for wilful and wanton conduct (punitive damages) for intentional trespass to the trees. The jury found in defendants' favor on the nuisance count, but then awarded $5,000 for wilful and wanton conduct (punitive damages) on the intentional nuisance count. On the assault counts, the jury found in plaintiffs' favor but awarded no damages.

Judgment was entered on the verdict on June 16, 1999. The trial court denied plaintiffs' posttrial motion on October 27, 1999, regarding all counts except the nuisance counts (counts VII and VIII of the third amended complaint). The trial court vacated the verdicts on the nuisance counts as irreconcilably inconsistent. On August 7, 2000, the trial court granted plaintiffs leave to voluntarily dismiss the nuisance counts and declared that the order was final and appealable and that there was "no reason to delay enforcement or appeal of this or previous orders." On August 8, 2000, plaintiffs filed their notice of appeal, and, on August 28, defendants filed their notice of cross-appeal.

On appeal, plaintiffs argue that the trial court erred by instructing the jury that damages for the cut trees would be trebled pursuant to the Wrongful Tree Cutting Act. Defendants assert that the jury was properly instructed because the trebling provision is a manner of assessing compensatory and not punitive damages.

●1 The determination of proper jury instructions lies within the sound discretion of the trial court and will not be disturbed upon review absent an abuse of that discretion. *Department of Transportation v. Bolis*, 313 Ill. App. 3d 982, 987 (2000). Jury instructions should, taken as a whole, fairly and correctly state the law and be sufficiently clear so as not to mislead the jury. *Magna Trust Co. v. Illinois Central R.R. Co.*, 313 Ill. App. 3d 375, 388 (2000).

●2 The trial court provided the following instruction to the jury:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute, The Wrongful Tree Cutting Act, which provides that any party found to have cut any timber or trees which he or she did not have the full legal right to cut or caused to be cut shall pay the owner of the timber or trees three times its 'stumpage' value as determined by the jury. 'Stumpage' value means standing trees.

The defendants, [*sic*] have admitted a violation of this statute. It is [*sic*] thus, up to the jury to determine the amount of the damages. You are to determine the stumpage value of the trees based upon all the evidence you heard."

The trial court also provided the following verdict form:

"Three times the standing value of the trees cut down on plaintiffs' property.                     $_____ "

After reviewing the instructions and pertinent provision of the Act, we believe that the instructions, taken as a whole, sufficiently stated the law. And, while the verdict form could have more clearly reflected the jury's obligations to first determine the stumpage value and then triple that figure, the instructions, read together, were sufficiently clear.

Further, contrary to plaintiffs' assertion, there is nothing in the language of the statute indicating that the jury cannot be told that the stumpage value must be tripled. We do not believe that this information alone caused confusion or misled the jury. Therefore, the trial court did not abuse its discretion by instructing the jury regarding this issue.

We recognize that, under the federal cases cited by plaintiffs addressing the Clayton Act, 15 U.S.C. § 15 (1994) (*Noble v. McClatchy Newspapers*, 533 F.2d 1081 (9th Cir. 1976); *Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240 (5th Cir. 1974)), the jury may not be told of the trebling provision. However, we believe that the jury is entitled to and should know the law as contained in the Wrongful Tree Cutting Act. The Act expressly provides that the measure of damages is three times the stumpage value. 740 ILCS 185/2 (West 1996). We see no reason to keep this from the jury. The federal cases cited by plaintiffs are distinguishable from the case at bar because the cases addressed a federal statute not at issue here. Thus, these cases are not controlling.

Next, plaintiffs argue that the trial court abused its discretion by allowing improper statements during defense counsel's closing argument and that they are entitled to a new trial. Defendants assert that the statements were not improper and that, even if they were, plaintiffs are not entitled to a new trial because the statements did not prejudice plaintiffs. We agree with plaintiffs.

●3 Generally, during closing argument, counsel is allowed broad latitude in drawing reasonable conclusions from the evidence. *Becht v. Palac*, 317 Ill. App. 3d 1026, 1038 (2000). Improper statements made during closing argument do not require reversal unless the statements resulted in substantial prejudice to the opposing party. *Ramirez v. City of Chicago*, 318 Ill. App. 3d 18, 26 (2000).

●4 Plaintiffs cite numerous instances of improper argument. Defense counsel told the jury during closing argument that when determining the value of the cut trees "you have to factor in that you're going to triple it" and "[t]hen you triple it." Defense counsel stated that plaintiffs were "looking for" "$15,000 times three," and "[t]hat's $45,000 they want for the damage to this small area at the very rear of their property." Defense counsel then stated that "[t]hey want $45,000 for this section right back here (indicating), which she acknowledged she paid $50,000 for the whole lot and they're looking for $45,000," and "for $10,000 they could probably buy 50 of them and put them back there in beautiful, pristine condition; and they're more than compensated. They don't want this. They want this punishment thing. They want to stick it to him."

Defense counsel completely misstated the law and, essentially, asked the jury to ignore the legislature's mandate that the stumpage value was to be determined and then tripled. Defense counsel essentially told the jury that it could choose to ignore the legislature's mandate to punish defendants and simply award plaintiffs actual damages only. This is not what the legislature intended. Defense counsel told the jury not to first determine the stumpage value of the trees and then triple it as section 2 of the Act provides. Instead, defense counsel invited the jury to ignore this statutory method of determining damages and to consider the trebling effect in its determination of the value of the trees. The Act directs the fact finder to first determine the stumpage value of the trees and, after that amount has been determined, to triple it. See 740 ILCS 185/2 (West 1996). The tripling effect is not to be considered when determining the stumpage value. Thus, defense counsel made blatant misstatements of the law, and the trial court abused its discretion by overruling plaintiffs' objections.

•5 Having determined that the treble damages argument presented by defense counsel in the instant case constituted error, we must determine whether the error prejudiced plaintiffs and requires reversal. In determining whether improper statements were prejudicial, we must consider their likely effect upon the jury. *Ramirez*, 318 Ill. App. 3d at 30.

By awarding $10,500 as three times the stumpage value of the trees, the jury necessarily found that the value of the trees before trebling was $3,500. However, there is no testimony to support this figure. Hall, plaintiffs' expert, testified that the stumpage value of the trees was $15,448, based on the trunk formula method, a method commonly used in the industry. Hall also stated that the replacement value of the trees was $8,350—$6,600 for the trees at $200 each, and $1,750 for other costs, such as tree repair. Ware, defendants' expert, stated that Hall's figures were inflated, but Ware did not provide a specific stumpage value for the trees. Ware did opine that only 12 to 15 trees needed to be replanted. Ware did not provide an opinion as to the cost of planting the new trees. Therefore, the lowest possible value supported by testimony was $4,150—$2,400 for the cost of 12 trees, using Hall's cost of $200 a tree, plus $1,750 for other costs, including repair of existing trees. Trebling this figure would result in an award of $12,450, which is $1,950 more than the jury's award in this case. The jury's award of damages for the cut trees indicates a strong likelihood that the jury accepted the formula suggested by defense counsel's improper statements as its method for calculating the value of the trees rather than performing the formula and mathematical computations pursuant to section 2 of the Act. For this reason, we cannot say

that the improper statements made by defense counsel did not prejudice plaintiffs. Further, the trial court erroneously overruled plaintiffs' objections to these statements. Accordingly, plaintiffs are entitled to a new trial on the issue of the value of the cut trees under the Act.

●6 On cross-appeal, defendants argue for the first time that the only method that should be used to determine the value of cut trees is the value of the trees as cut timber. Defendants urge this court to hold, for purposes of remand, that the Act limits recovery to only three times the value of the trees as cut timber. Because defendants did not raise this issue in the trial court, it is waived.

However, even if it were not waived, the argument would fail. Defendants' narrow interpretation of "stumpage value" is not supported by the language of the statute. It is well established that the best evidence of the legislature's intent is the language used in the statute itself, which must be given its plain and ordinary meaning. *Lulay v. Lulay*, 193 Ill. 2d 455 (2000). The Act expressly states that a plaintiff must be awarded three times the "stumpage value" of the cut timber or *trees*, indicating a clear intention not to limit damages to the value of the trees as cut timber. See 740 ILCS 185/2 (West 1996). Further, the Act defines "stumpage" as "standing tree." 740 ILCS 185/1(a) (West 1996). This definition does not include the word "timber." Defendants' interpretation turns the plain language of the Act on its head. Contrary to defendants' contention, there is nothing in the Act or case law indicating that recovery is limited to three times the value of the trees as cut timber. This would defeat the legislature's purpose "to protect trees on private property." *Wujcik v. Gallagher & Henry Contractors*, 232 Ill. App. 3d 323, 329 (1992). If cut trees could be valued only as cut timber, trees on residential property might be undervalued, thereby defeating the purpose of the Act. Thus, we cannot adopt defendants' interpretation.

Defendants' citation to *Aaron v. Hendrickson*, 221 Ill. App. 3d 842 (1991), to support their argument is misplaced. Unlike the trees in this case, the trees at issue in *Aaron* were timber. Thus, the value of the trees as cut timber was an appropriate measure of value in *Aaron*. In contrast, the trees cut in this case were not timber but trees on residential property. Therefore, *Aaron* does not support defendants' argument here.

Defendants also cite other cases to support their argument, but the plaintiffs in those cases did not seek relief under the Wrongful Tree Cutting Act and there is nothing in these cases to support defendants' position. See *Wujcik v. Gallager & Henry Contractors*, 232 Ill. App. 3d 323 (1992); *Rodrian v. Seiber*, 194 Ill. App. 3d 504 (1990).

●7 Next, we address defendants' cross-appeal, seeking a reversal of

the award of punitive damages for the wilful and wanton cutting of plaintiffs' trees. Defendants assert that plaintiffs cannot be awarded both treble damages under the Wrongful Tree Cutting Act and punitive damages for the *same* wrongful conduct because both are designed to punish defendants. We agree with defendants.

In *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350 (1986), our supreme court held that, while a plaintiff can seek both statutory treble damages and common-law punitive damages, he cannot recover both for a single injury. There is no doubt that the treble damages provision of section 2 of the Wrongful Tree Cutting Act is "punitive in nature." *Aaron*, 221 Ill. App. 3d at 849. The obvious purpose of allowing plaintiffs to recover three times the value of their trees is to "discourage[ ] persons from cutting down others' trees without thoroughly checking out boundary lines" (*Aaron*, 221 Ill. App. 3d at 849), punish violators, and discourage future violations. See also *Harris*, 111 Ill. 2d at 361. Therefore, the recovery of both punitive and treble damages under the Act would amount to an impermissible double recovery in this case because both awards were based on the same injury. See *Harris*, 111 Ill. 2d at 361. Accordingly, upon remand, plaintiff may seek both treble and punitive damages, and the trial court can then enter judgment on both verdicts in the alternative, allowing plaintiffs to recover only one or the other award. See *Harris*, 111 Ill. 2d at 366.

For the reasons stated above, we reverse as to the issue of damages under the Wrongful Tree Cutting Act only and remand the cause for a new trial as to damages under the Act only, with instructions consistent with this opinion. Regarding defendants' cross-appeal, we affirm the award of punitive damages but direct the trial court to enter the judgments for damages under the Act and common-law punitive damages for the same conduct in the alternative.

The judgment of the circuit court of McHenry County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

GROMETER and BYRNE, JJ., concur.